369 F.Supp. 659 (1973)
Arthur Lee LEWIS, Petitioner,
v.
UNITED STATES of America, Respondent.
No. 73 C 528(3).
United States District Court, E. D. Missouri, E. D.
December 17, 1973.
Robert T. Johnson, St. Louis, Mo., for petitioner.
Donald J. Stohr, U. S. Atty., and Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for respondent.

MEMORANDUM AND ORDER
WANGELIN, District Judge.
Petitioner, Arthur Lee Lewis, Jr., pled guilty on April 11, 1972 to one count of possession of goods which had been stolen from interstate commerce. He was sentenced to seven years imprisonment. Petitioner was originally charged along with his common-law wife Maggie Lewis and George Ronald Dugan in a three-count indictment which alleged two violations of Section 659, Title 18, United States Code, and one count of conspiracy in violation of that section.
Petitioner filed a motion to vacate sentence pursuant to Section 2255, Title 28, United States Code, alleging first, that the Government knowingly used perjured testimony in order to secure the indictment, second that he was denied equal protection of the laws in that his co-defendant George Ronald Dugan received a lesser sentence than he, third, that his plea of guilty was neither knowledgeable nor voluntary but resulted from coercion, pressure, and a false promise by Petitioner's retained counsel, that a bargain had been reached with the United States Attorney concerning sentencing and fourth, that the Court lacked jurisdiction in this matter as the goods in question were not a part of interstate commerce when they were stolen.
The Court ordered an evidentiary hearing to enable Petitioner to bring forth evidence which would substantiate his allegations. The Court also appointed Mr. Robert T. Johnson to aid Petitioner in his preparation and presentation. The hearing was held on November 9, 1973.
Petitioner's first allegation that the Government knowingly used perjured testimony in order to secure an indictment is totally without merit. Petitioner alleges that for some unexplained reason, the Government introduced false *660 evidence before the Grand Jury that Petitioner and Maggie Lewis were husband and wife. From the evidence produced at the hearing in this matter (H. tr. 5)[*], as well as the copy of a marriage certificate provided by Petitioner, it is apparent that prior to April 22, 1972, Petitioner and Maggie Lewis had been living together without benefit of a marriage ceremony. However, whether or not the parties were in fact husband and wife had no bearing on the Grand Jury proceedings. A Grand Jury returns an indictment on the basis of facts tending to establish the elements of an offense. The relationship of the parties has no bearing on whether or not an indictment is returned. Furthermore, there has been no showing that the Government knew that Petitioner and Maggie Lewis were not legally married nor was there any showing as to why the Government would want to allege such a fact if they knew it was not true.
Petitioner next contends that he has been denied Equal Protection of the Laws in that he received a longer sentence than his co-defendant George Ronald Dugan. The mere fact that a co-defendant received a lesser sentence does not entitle Petitioner to relief under Section 2255. Humphries v. United States, 328 F.2d 886 (8th Cir. 1964); Egan v. United States, 268 F.2d 820 (8th Cir. 1959). Furthermore, the evidence produced at trial and at Petitioner's plea clearly shows that Petitioner had been entrusted with the goods in question and that he stole them. Co-defendant Dugan entered the scheme at a later date and aided Petitioner in the sale of goods while Petitioner ran the entire enterprise.
The main point in Petitioner's motion and the area where the greatest amount of attention was centered at the hearing concerned the voluntariness of Petitioner's plea. Petitioner alleges that his plea was involuntary and not knowledgeable and that the Court failed to establish a basis in fact for the plea. Petitioner's evidence at the hearing tended to show that Petitioner is a man of very limited education and that he can neither read nor write. Petitioner testified that his retained counsel Mr. Murray Stone failed to represent him but repeatedly urged him to plead guilty. Petitioner testified that he had been informed by his attorney that he would receive a much longer sentence if he went to trial. Petitioner further testified that his attorney met with the Government's counsel Mr. Charles Kitchin on several occasions, each time returning and relating that he had arranged a deal. Petitioner testified that his counsel assured him that if he pled guilty to one count of the indictment that the charges against his wife would be dropped and that he, Petitioner, would receive a sentence of three years or less and probably probation. Petitioner stated that he did not understand the nature of the charges against him and that prior to his plea of guilty, he was instructed by his counsel as to what to say when asked by the Court what he had done to commit the offense. Petitioner further alleged that he was instructed by his counsel that he would give Petitioner signals in the form of nods and winks as to how to respond to the Court's questions. Petitioner further testified that Mr. Stone told him to state that no promise or suggestion as to a sentence had been made in order to get him to plead guilty or the Judge would get mad. Petitioner stated that he did not understand the proceedings at the time of the guilty plea but looked to his attorney who gave him nods, winks and other indications as to how to answer the questions asked. No evidence was produced by Petitioner at the hearing which showed that the United States Attorney had made any bargain with Petitioner's counsel.
The Government's evidence was in direct conflict with that of Petitioner. Mr. Charles Kitchin, former Assistant United States Attorney, testified as to *661 the events that surrounded Petitioner's plea. Mr. Murray Stone testified that he had been retained by Petitioner and his wife. He stated that prior to trial he had filed several motions, hired a private investigator to look into the matter and had also inspected the coats in question. He testified that he had several meetings with his clients and that Petitioner was apprised of the possible sentence if he were to be found guilty on all three counts. Mr. Stone testified that he informed Petitioner about the strength of the Government's case and he did discuss with Mr. Kitchin the possibility of dismissing two counts for a plea of guilty to one count and that also he was successful in having the charges against Maggie Lewis dropped. Mr. Stone denied ever having guaranteed Petitioner a specific sentence and further denied ever having given Petitioner instructions as to how to answer the questions asked of him through nods, winks or other motions.
Fortunately, the issues in this case need not be decided on the credibility of the witnesses involved. The Court has a clear recollection of the circumstances attending Petitioner's guilty plea. There was no winking, blinking or nodding on the part of the defense attorney at the time of the plea as Petitioner alleged. Furthermore, the record shows that a factual basis was established at the time of the plea on which the plea was accepted. Petitioner admitted that he had been entrusted with the goods in question and that he failed to deliver them, but instead returned to the place where he had left them and later sold them. The record also refutes Petitioner's claim that he had been instructed what to say by his counsel in that after the plea had been accepted and after a discussion concerning the pre-sentence report was held, Petitioner requested (Tr. 57) that he be allowed to make a statement. Petitioner at that time reiterated that he had stolen the coats and further added that he had done so alone and that no one else was involved. This statement was also made without any prompting by defense counsel.
As to the Petitioner's allegation that he did not understand the charge to which he pled guilty, the Court takes notice of Petitioner's limited educational background. However, the evidence produced at the hearing shows that Petitioner understands the meaning of stealing and also the consequences of such actions. The record at the time of Petitioner's plea shows that Petitioner had the coats in his possession, and that he knew they were stolen in that he was the one who had stolen them. Petitioner was instructed by the Court as to his rights and he stated that he understood them. Petitioner was informed by the Court of the possible consequences of his plea. The Court again finds that Petitioner's plea was voluntary and knowledgeable and that there was a basis in fact for that plea.
Petitioner finally alleges that the goods in question were not in interstate commerce at the time they were stolen. The Court of Appeals' opinion in Petitioner's co-defendant's appeal, United States v. George Ronald Dugan, 477 F. 2d 140, 1973, is dispository of this issue. The Court noted:
"The evidence shows that the chattels (coats) in question were manufactured by the California Manufacturing Company, California, Missouri. The bills of lading, corresponding to the two stolen shipments involved here, bear customer names whose places of business are situated outside the State of Missouri. Defendant Arthur Lewis, Jr., was a driver for St. Louis-Kansas City Express, an intrastate carrier, and in that capacity, stole the two shipments of coats. The coats were enroute to St. Louis, Missouri, where they would have been transferred to an interstate carrier to continue their journey. The chattels never left the State of Missouri."
Furthermore as the Court noted in United States v. Yellow Cab Co., 332 U. *662 S. 218, 228-229, 67 S.Ct. 1560, 1566, 91 L.Ed. 2010, the fact that certain goods were at the moment stolen, being carried by an intrastate carrier makes them no less a part of interstate commerce. "That portion must be viewed in its relation to the entire journey rather than in isolation. So viewed, it is an integral step in the interstate movement." Id. at 229. Petitioner's allegation is therefore without merit.
In consequence;
It is hereby ordered that Petitioner's motion to vacate sentence be and is denied.
NOTES
[*] Hearing transcript.