COMMONWEALTH vs. DONALD E. LINCOLN.

Hampshire.  May 5, 1975. — June 30, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Indictment, Grand jury proceedings, Dismissal of indictment.

The affirmative answer of the victim of a kidnapping and rape by three men to a grand juror's question whether she had "seen and identified" the rapists referred to marking the appearance of each of them during the five hours of her travail, and a motion to dismiss indictments arising therefrom on the ground that the victim's answer was inconsistent with her testimony on direct examination at the trial that she had not "identified" the defendant until four months after the grand jury hearing, and on the ground that the prosecutor made "knowing use of false testimony," was rightly denied. [283-285]

INDICTMENTS found and returned in the Superior Court on November 17, 1971.

The cases were heard by *Lappin,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Kenneth Weiss,* for the defendant, submitted a brief.

*John M. Callahan,* District Attorney (*Stephen R. Kaplan,* Assistant District Attorney, with him) for the Commonwealth.

KAPLAN, J.  On this appeal under G. L. c. 278, §§ 33A-33G, from convictions of kidnapping and rape after a jury waived trial,[1] the defendant Donald E.

---

[1] On the rape charge the defendant was sentenced to the Massachusetts Correctional Institution at Walpole for not less than eight nor more than ten years; and on the kidnapping charge to the same term, sentence suspended, probation for three years, this sentence to begin on and after the sentence for rape.

Lincoln now claims error only in the judge's denial of his motion to dismiss the indictments by reason of a certain answer given by the victim to a question asked by one of the members of the grand jury. We hold that the motion was properly denied; there was no error; the judgments will be affirmed.

We note briefly the facts (as they now can be taken to be) needed for an understanding of the case. About 2:30 A.M., October 10, 1971, the victim and her boyfriend, who were hitchhiking from Syracuse, New York, found themselves near the entrance ramp to Route 91 from the Massachusetts Turnpike. They were in need of a ride to Amherst where the victim was a student at the University of Massachusetts. An old Ford Galaxie drove up with two men in the front seat and a third in the back; they offered to drop the couple off at Amherst. The victim and boyfriend took their places in the back seat. The car proceeded on Route 91, then down Route 202 and onto Route 116, and stopped about one-half mile south of the South Hadley-Amherst line. Here the boyfriend was forced out of the car at knife point. The car went on to Route 5 in West Springfield where a stop was made to buy gas, the victim being threatened if she should make an outcry. Reaching Hampden, the car was stopped in a wooded area. The three men with force and threats of force and with display of a knife and a revolver, attacked and raped the victim. At sunup the journey was resumed, and the car reached Holyoke, where one of the men and the victim switched to a parked Bel Air Chevrolet in which she was driven to the Hampshire College driveway in Amherst. She then made her way to her college. The time was about 7:30 A.M.

The victim was thus in the presence of the rapists for about five hours. The men referred to one of their number as "Gus," a second (the one who drove the victim to Amherst) was called "Donnie"; the name of the third (the driver of the Galaxie) was not used.

About two weeks after the criminal incident, the victim, shown photographs by the police, pointed to one as that of the driver. On October 25, three men, Arthur B. Stoddard (the driver), and Augusto R. Lincoln and the defendant Donald E. Lincoln (brothers), were arrested in Springfield. The former two gave statements to the police acknowledging their part in the story as told above and involving the defendant, who denied guilt. Some time thereafter the victim learned from the police the names of the arrested men. It was not until Friday, March 10, 1972, that the victim was shown photographs including one of the defendant; she promptly picked out the defendant's picture. The trial had been set for Monday, March 13, 1972. On March 11 the defendant's counsel interviewed the victim and the boyfriend and elicited the fact that the victim had identified the defendant the day before.

Previously, in November, 1971, the grand jury had indicted the three men on the basis of testimony by policewoman Gloria T. Kennedy and the victim. The policewoman informed the grand jurors of the statements by Stoddard and Augusto Lincoln. The victim gave a detailed account of what had happened to her and what she had observed on October 10, 1971, using the names of the three men and giving descriptions of each. At the conclusion of her testimony one of the jurors asked: Q. "Were these white boys?" A. "Yes, they were." Q. "You have seen and identified them?" A. "Yes, I have."

As the trial was jury waived, a motion by the defendant to suppress identification was heard as part of the trial proper. Cross-examining the victim, the defendant's counsel brought out a claimed inconsistency between her testimony before the grand jury, in which she stated that she had "identified them," and her testimony on direct examination, that she had not "identified" the defendant until four months after the grand jury hearing, on March 10, 1972, just three days before

the commencement of trial. Thereupon, defendant's counsel made his motion to dismiss the indictment, denial of which by the judge is questioned on this appeal.

Specifying his grievance, the defendant in his assignments states that the judge erred "[i]n denying the defendant's motion to dismiss on the ground that defendant was indicted by the Grand Jury on false information" and "[i]n allowing the District Attorney's knowing use of false testimony." The Commonwealth indicates it is quite prepared to concede that dismissal of the indictment (and with it, reversal of the judgment) would be in order if the defendant could support the grave charge of "knowing use of false testimony" by the prosecution. But it is evident that both charges were stated hyperbolically and cannot be fairly maintained.

The defendant makes no claim that any part of the victim's testimony before the grand jury was dishonest. On the contrary, the defendant appears to grant her entire good faith. When she said "yes" to the question whether she had seen and "identified them" (the rapists), she must be taken to have understood "identified," not in the technical sense of a matching of her recollections with pictures of the individuals or with the individuals themselves, but rather in the layman's sense of having marked the appearance of each of the assailants during the five hours of her travail. It is indeed likely that the questioning grand juror and his colleagues understood the victim's answer in the same nontechnical sense, or at any rate did not advert to it in the technical sense.

The further claim, that the prosecution made knowing use of false testimony, is not supported by anything more than the fact of the victim's utterance. There can be no suggestion on the present record that the prosecution intended to deceive the grand jury, nor, if it be material, is a case of negligence made out in the failure of the prosecutor instantly to perceive and correct the possible mistake or ambiguity in the victim's statement. No one connected with the prosecution was called and interro-

gated. Thus the situation here is quite different from those pictured in cases where the prosecution solicited and used testimony that it knew to be false, of a set purpose to help to convict an accused, or, without itself soliciting such testimony, consciously used it or permitted it to be used to that end. *Commonwealth* v. *Hurst,* 364 Mass. 604, 608-609 (1974). *Napue* v. *Illinois,* 360 U. S. 264 (1959). *Giglio* v. *United States,* 405 U. S. 150 (1972). *United States* v. *Basurto,* 497 F. 2d 781 (9th Cir. 1974). *Lewis* v. *United States,* 369 F. Supp. 659, 660 (E. D. Mo. 1973). At worst we have here a case where question and answer were ambiguous, the defendant's counsel made the most of the ambiguity in cross-examining the victim, and the trier nevertheless found the defendant guilty on abundant evidence.

Once the prosecution is exonerated of "playing an ignoble part," nothing is left of the defendant's appeal; he disclaims asking us to review the sufficiency of the evidence before the grand jury on which they found probable cause. See *Commonwealth* v. *Benjamin,* 358 Mass. 672, 677 (1971); *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 229 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972); *Commonwealth* v. *Hare,* 361 Mass. 263, 269 (1972).

Other points made in the briefs need no extended discussion.[2]

*Judgments affirmed.*

---

[2] The defendant argues that the grand jury testimony of policewoman Kennedy was improperly added to the appeal record after the record was first made up, but we think it was correctly added on the prosecution's motion. Compare Mass. R. A. P. 8 (e), 365 Mass. 849 (1974) (correction or modification of the record). In all events, in our view the result of the appeal is unaffected if the policewoman's testimony is wholly disregarded.

The defendant refers to the policewoman's testimony as "hearsay," presumably because it is not shown that she was present when the

---

statements were given. (It was mild hearsay because there could not be much question about the content of the statements which were evidently in writing.) In the past we have upheld an indictment resting entirely on hearsay even though witnesses were available to give direct testimony. *Commonwealth* v. *Ventura,* 294 Mass. 113, 119-120 (1936). See *Commonwealth* v. *Walsh,* 255 Mass. 317 (1926); *Costello* v. *United States,* 350 U. S. 359 (1956). See, however, a preferred procedure mentioned in A. B. A. Standards Relating to The Prosecution Function and The Defense Function, § 3.6 (Approved Draft 1971), and compare a view that has been discussed in the Second Circuit. *United States* v. *Umans,* 368 F. 2d 725, 730 (2d Cir. 1966), cert. dismissed as improvidently granted 389 U. S. 80 (1967); *United States* v. *Arcuri,* 282 F. Supp. 347 (E. D. N. Y. 1968), affd. 405 F. 2d 691, 692-694 (2d Cir. 1968), cert. den. 395 U. S. 913 (1969); *United States* v. *Estepa,* 471 F. 2d 1132, 1136-1137 (2d Cir. 1972).