**Max J. ALLEN et al., Plaintiffs, Appellants,**

v.

**Linwood H. SNOW et al., Defendants, Appellees.**

No. 80–1304.

United States Court of Appeals, First Circuit.

Argued Oct. 6, 1980.

Decided Nov. 25, 1980.

Ronald F. Kehoe and Albert L. Hutton, Jr., Boston, Mass., with whom Barbara Bruce Williams, Haussermann, Davison & Shattuck, William Madden, David A. Mills, and Mills & Teague, Boston, Mass., were on brief, for plaintiffs, appellants.

Paul W. Shaw, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Defendants Allen, Cappiello, Koplow and one George Lincoln were indicted in October, 1977 in the Massachusetts superior court for conspiring to burn a building on Symphony Road, Boston, and so to defraud an insurance company. This was part of an alleged arson ring which had received a great deal of publicity, and the defendants, other than Lincoln, who had made a plea bargaining agreement, were justly apprehensive of a tainted jury. They engaged in a joint enterprise to counter it, including dispatching investigators to determine whether the veniremen owned their homes, and the quality of their neighborhoods. The jury was to be sequestered. Two jurors were chosen the first day. The morning of the second the prosecutor informed the court that the investigation was taking place, and that it included personal interviews of neighbors. The court's response to this last was immediate and strong. Although counsel asked for, and received, a second conference after the noon recess, they agreed among themselves after the first to cancel the entire investigation and did not resume it.

Defendants' appeal from their subsequent convictions went directly to the Supreme Judicial Court, and resulted in an affirmance with an extensive opinion. *Commonwealth v. Allen,* —— Mass. ——, 1980 Mass. A.S. 175, 400 N.E.2d 229. After painstakingly reviewing the record the court rejected defendants' claim that the trial court had ordered the cessation of the investigation, and held that counsel had abandoned it voluntarily. Defendants now seek habeas corpus, contending that the trial judge had, at least in effect, ordered the investigation stopped, and, in any event, had put counsel in such fear of contempt that their personal apprehensions conflicted with their duty to their clients, thereby depriving defendants of fair representation. Defendants offered the district court affidavits of counsel concerning their interpretation of, and reactions to, the court's remarks and requested an evidentiary hearing. These moves were both rejected and their petitions dismissed.

■ There are several possible reasons why the district court's action was correct. It may be said that there has been a full

and fair determination of the issue by the state court, with no occasion to retry it. 28 U.S.C. § 2254(d). Secondly, it is doubtful whether, had the court in fact ordered the investigation stopped, it would have been constitutionally improper. Such an investigation could have affected the jury. *United ed States v. Barnes*, 2 Cir., 1979, 604 F.2d 121, 137–43, *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260. *See also*, ABA Standards Relating to the Prosecution Function and the Defense Function, § 7.2(b) at 263 (approved draft 1971). However, we cut through to the heart of the matter: (1) our independent study of the record satisfies us that the court did not order even part of the investigation stopped; (2) the test of counsel's subjective reaction is not the correct one, and, (3) objectively, counsel's cause for apprehension was only that inherent in the situation, and was not chargeable to any impropriety by the court.

■ The first of these conclusions needs no comment–we agree with the Massachusetts court's analysis. The second should be self–evident–the court was chargeable objectively with what counsel should reasonably feel, not with whatever counsel might choose to say afterwards.[1] Finally, and most important, one would have expected counsel to have had apprehensions even if the court had said nothing. Nor, in light of what we have already said, can we fault the court's feelings. Indeed, it might well have been subject to criticism if, when the matter was called to its attention, it had delayed expressing them until later. We add that our response might well be the same even were we to find the court's comments excessive. Trying a case is not a parlor game–there is always a chance that a court may have an unjustified reaction. To a considerable extent counsel must be prepared to back their own conduct, and rely, if necessary, on the appellate courts.

■ Defendants next challenge the trial judge's statement in the course of charging the jury what was and what was not evidence, that "[e]vidence is not whether you agree that the Commonwealth was wise or prudent to plea bargain with Lincoln for his testimony. That's not evidence." Defendants argue that this removed the fact of Lincoln's plea bargain from the jury's consideration in evaluating the credibility of his testimony. We do not share this interpretation. Neither here nor elsewhere was the jury told that Lincoln's status did not bear on his credibility. On the contrary, it was instructed to consider the reliability of the evidence before it, including "whether or not a witness has a particular interest in the case . . . [and] whether or not, in your judgment, such personal interest affected that witness' credibility." While this would be insufficient under our own rule with respect to accomplice testimony, *McMillen v. United States*, 1 Cir., 1967, 386 F.2d 29, *cert. denied*, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288, it was not constitutionally inadequate. *Cupp v. Naughten*, 1973, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368; *Grieco v. Meachum*, 1 Cir., 1976, 533 F.2d 713, 720–21, *cert. denied*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135. We are not persuaded by defendants' argument that coupling the instructions given with the court's failure to give certain others somehow produced a synergistic effect.

We have left to the last, because we are troubled by it, the cross–examination of Koplow's wife. There was evidence of an incendiary fire at Koplow's premises, and Lincoln testified that Koplow had admitted setting it. By way of an alibi, Mrs. Koplow testified that she was at home with her husband at the time this fire was allegedly set, and that he had received a call about if from one of his tenants. On cross–examination, the prosecutor asked whether she recalled receiving a call concerning a fire at her husband's property on another date,

---

1. *E. g.*, we note that attorney Hutton wished to give his opinion why the trial judge acted as he did, and added that it was "of course . . . too late to try and reassemble the disbanded investigation after the second conference." We may ask why the investigation was disbanded if there was to be a second conference, or why there was a second conference if it was already too late.

seven months later. A bench conference was called, and defendants protested that bringing in other fires was highly prejudicial. The prosecutor gave as his purpose the testing of Mrs. Koplow's memory, viz., that she might have confused the occasions. He admitted that although he had evidence of the fire, he had none that a call was made to the Koplow home.

It is difficult to see the impeachment value of this question. If Mrs. Koplow testified to remembering such a call, it would not follow that there was none at the time of the previous fire. On the other hand, if she affirmatively recalled there was no call the second time, the prosecutor had no basis for arguing she was mistaken. Finally, post, if she had no recollection, there could be no inference of any kind. Under the circumstances, the prosecutor's disclaimer of an intent to introduce the other fires for their prejudicial effect has all the persuasiveness of a pitcher's protestations after bean–balling the lead opposition batter. It could be true, but one might doubt it. Nonetheless, over defendant's objections, the court allowed the question, and others like it concerning a number of other fires on Koplow properties. To each, Mrs. Koplow testified she had no recollection.

Had this been a federal trial we likely would, in the exercise of our supervisory power, have required the prosecutor to retry the case. This being said, it does not follow that we may do the same here. The writ of habeas corpus ordinarily will not lie solely to correct alleged errors in evidentiary rulings. *Lisenba v. California*, 1941, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 1222; *Salemme v. Ristaino*, 1 Cir., 1978, 587 F.2d 81, 85. To rise to constitutional magnitude, such an error must "so infuse the trial with inflammatory prejudice as to render a fair trial impossible." *Salemme v. Ristaino*, ante, 587 F.2d at 86. The Supreme Judicial Court held that any prejudice from the questions was cured by the

judge's instructions, both immediately and in his charge, that questions to which Mrs. Koplow responded she had no recollection were not evidence and were to be disregarded. Ordinarily, such instructions are deemed to cure any prejudice resulting from the jury's exposure to prior crimes or conduct of the accused.[2] *See United States v. Carrillo*, 5 Cir., 1978, 565 F.2d 1323, 1326, *cert. denied*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807; *United States v. Plante*, 1 Cir., 1973, 472 F.2d 829, 830–31, *cert. denied*, 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411. We do not find the Massachusetts court's appraisal of the total effect of the episode, in the context of an eleven day trial, so unpersuasive that we are obliged to call the trial unconstitutionally unfair.

*Affirmed.*

2. We do not agree with defendants' characterization of the instructions as "garbled." In any event, if they were inadequate–or garbled–the time to complain was then, not now. Nor do we agree that this episode was comparable to the introduction of evidence known to be false. *See, e. g., Miller v. Pate*, 1967, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690. No evidence of the other fires, false or otherwise, was introduced, and the jury was so instructed.