COMMONWEALTH vs. THOMAS J. MCJUNKIN
(and three companion cases[1]).

Plymouth. October 15, 1980. — March 26, 1981.

Present: BROWN, ROSE, & PERRETTA, JJ.

Rape. Practice, Criminal, Indictment, Grand jury proceedings, Open-
ing statement by defense, Instructions to jury, Sentence, Location
of defendant in courtroom. Evidence, Relevancy and materiality.

Dismissal of indictments charging the defendants with rape was not re-
quired on the basis that the Commonwealth had withheld from the
grand jury evidence that a doctor had testified at the probable cause
hearing that in his opinion the victim was "probably" a virgin when he
examined her some fourteen hours after the alleged rape. [612-614]
The judge at a criminal trial did not abuse his discretion in refusing to
allow the defendants to make their opening statements after the open-
ing statement of the Commonwealth, as permitted by Mass.R.Crim.P.
24(a) (1), where defense counsel failed to establish a reasonable basis
for their belief that certain evidence to be previewed in their openings
would be forthcoming during the Commonwealth's case; nor was there
support in the record for the defendants' claim that they were preju-
diced by such refusal. [614-617]
In the circumstances, there was no merit to contentions that the defend-
ants at a rape trial were prejudiced by the judge's failure to rule on
their requests for jury instructions prior to their closing arguments pur-
suant to Mass.R.Crim.P. 24(b), and by the judge's failure to advise
them prior to their summations that he was not going to charge the
jury on lesser included offenses. [617-618]
The defendants in a criminal case could not complain that the judge sen-
tenced them without the benefit of a comprehensive report from the
probation department where they had ample opportunity before sen-
tencing to review the reports which had been compiled and failed to
offer the judge on the day of sentencing any additional information
which would have justified a continuance for the purpose of further
investigation by the probation department. [618-620]

[1] One against Thomas J. McJunkin and two against Richard A. Dicenso.

The defendants at a criminal trial were not prejudiced by their being seated behind their attorneys and in front of the dock. [620]

At a criminal trial, there was no error in admitting in evidence a knife voluntarily turned over to the police by the defendant at the time of his arrest which the victim testified was similar to the one used in the commission of the crime. [620-621]

INDICTMENTS found and returned in the Superior Court Department on August 31, 1978.

The cases were tried before *Dwyer*, J.

*Murray P. Reiser* for Thomas J. McJunkin.

*John C. Martland (Jordan L. Ring* with him) for Richard A. Dicenso.

*John P. Corbett*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. The defendants were convicted of kidnapping, G. L. c. 265, § 26, and assault and battery by means of a dangerous weapon (a knife), G. L. c. 265, § 15A. They were acquitted of related, but separate, charges of rape, G. L. c. 265, § 22, and assault and battery with a hatchet. On appeal they claim: (1) that the Commonwealth failed to present to the grand jury evidence exculpating them of the alleged rape; (2) that the judge failed to comply with Mass.R.Crim.P. 24(a)(1), 24(b), and 28(d)(2), 378 Mass. 895, 895, 899 (1979); (3) that their seating accomodations during their trial diluted their presumption of innocence; and (4) that a knife "similar" to that which they were alleged to have used against the victim was improperly received in evidence. We affirm the judgments.

The evidence presented to the jury was as follows. About 4:30 P.M., on November 8, 1977, McJunkin went to the home of the victim, whom he had known since that summer, and invited her for a ride. She accepted, and when she approached the car with him, she saw Dicenso in the driver's seat and an intoxicated male in the front passenger seat. As she got into the back of the car with McJunkin, she noticed empty beer bottles on the floor. Other than the victim's complaints that Dicenso was speeding, the ride was

without incident until McJunkin announced his need to relieve himself. Dicenso pulled off the road and into a sheltered area. McJunkin left the car, and the victim asked Dicenso to take her back home as soon as McJunkin returned. In response, Dicenso turned to the victim and put his hand over her mouth. He held a knife to her throat with his other hand. The victim stated that Dicenso, in effect, told her to be still and that he would just as soon kill her then and there.

After McJunkin returned to his place in the car and the doors were locked, Dicenso ordered the victim to climb over to the front seat. As she did so, she saw that Dicenso had a small hatchet in his lap. They next drove to another sheltered area where Dicenso again stopped the car, gave the knife to McJunkin, got in the back with the victim and took off her clothes. The victim testified that she was then raped, being "fully" penetrated for approximately four minutes by each defendant. She offered no struggle because of their number and weapons. When finished with her, they drove her to an area near her home. It was about 5:30 p.m. As they left her, they warned her to tell no one what had happened.

The victim's mother testified that when she arrived home from work, her daughter was in her room, crying. When she inquired of her daughter as to why she was crying, the victim related what had been done to her. The next morning, the mother took the victim to a hospital where she was examined by one Dr. James Ladd.

Dr. Ladd testified that his examination failed to reveal any sperm in the victim's vagina or any bruises on her body. He did observe an excoriation on the right inner side of the opening to her vagina. Because of the size of the speculum that was required to examine the victim, Dr. Ladd was of the opinion that at the time of his examination, which was about fourteen hours after the incident, the victim was "probably" a virgin.

Test results revealed the presence of seminal fluid on the victim's jeans and undergarments as well as on an area of

the back seat of the car. When Dicenso was arrested, he voluntarily turned over to the police a knife and told them that he always carried it on the front seat of his car.

1. *Evidence Presented to the Grand Jury.*[2]

The defendants moved to dismiss the indictments charging them with rape on the basis that the Commonwealth withheld from the grand jury Dr. Ladd's opinion that the victim was probably a virgin when he examined her.[3] The grand jury minutes presented to us show that unlike her probable cause hearing and trial testimony concerning "full" penetration, the victim testified before the grand jury that the defendants "made me have sex with them." See *Commonwealth* v. *Brown*, 9 Mass. App. Ct. 609, 610-611 (1980). The minutes further show that a grand juror questioned a police witness as to whether the victim had been medically examined and, if so, whether that examination indicated that the victim had been raped. The defendants complain that the responses of the police witness, who also had been at the probable cause hearing, and the prosecutor were misleading half-truths.[4] They claim that the prosecutor was ethically bound to relate all the aspects of Dr. Ladd's testimony to the grand jury. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 656 n.6 (1979), S.J.C. Rule 3:08, PF 7, as appearing in 382 Mass. 800 (1981); ABA Standards for Crimi-

---

[2] The defendants were bound over to the grand jury after a probable cause hearing. The victim, her mother, and Dr. Ladd testified at that hearing, giving essentially the same testimony as they did at the trial.

[3] The defendants argue that because their convictions are the result of prejudice spilling over from the inflammatory accusation of rape, their acquittals of that charge do not preclude them from asserting that the refusal to dismiss the rape indictments was reversible error. Because we conclude that there was no prosecutorial impropriety at the grand jury proceedings, we give no consideration to the defendants' contentions of prejudice.

[4] The officer and prosecutor responded by submitting, what defendants describe as illegible, Dr. Ladd's written report to the grand jurors for their scrutiny. While doing so, the prosecutor also stated that "the doctor testified in his report that he found a fresh scratch on the interior of the labia."

nal Justice, Prosecution Function § 3-3.6(b) (2d ed. 1979) ("No prosecutor should knowingly fail to disclose to the grand jury evidence which will tend substantially to negate guilt"). The failure to be candid, their argument continues, required dismissal of the rape indictments and, now, reversal of their convictions.

The issue is not whether evidence exculpatory to the defendants was withheld from the grand jury; rather, it is whether dismissals of the indictments are required because "the integrity of [the] grand jury . . . [was] impaired." *Commonwealth v. St Pierre,* 377 Mass. at 655, quoting from *United States v. Cruz,* 478 F.2d 408, 411 (5th Cir.), cert. denied sub nom. *Aleman v. United States,* 414 U.S. 910 (1973). See *United States v. Gold,* 470 F.Supp. 1336, 1353 (N.D. Ill. 1979); *Commonwealth v. Lincoln,* 368 Mass. 281, 284-285 (1975); *Commonwealth v. Gibson,* 368 Mass. 518, 523-525 (1975); *Commonwealth v. Robinson,* 373 Mass. 591, 592-593 (1977). See generally *Costello v. United States,* 350 U.S. 359, 362-364 (1956).

We see no affront to or impairment of the grand jury investigation in this case. The doctor's opinion as to the victim's virginity, even if accepted, does not necessarily preclude either a rape indictment or conviction. The Commonwealth, in either proceeding, need only show forcible penetration, no matter how slight. *Commonwealth v. McCan,* 277 Mass. 199, 203 (1931). *Commonwealth v. Coderre,* 360 Mass. 869 (1971). *Commonwealth v. Gallant,* 373 Mass. 577, 584 (1977). *Commonwealth v. Brattman,* 10 Mass. App. Ct. 579, 583-584 (1980). See also Perkins, Criminal Law 155 (2d ed. 1969).

The doctor's testimony, unaccompanied by an explanation that the degree of penetration is irrelevant, might have served only to confuse the true question before the grand jurors. See *Mallott v. State,* 608 P.2d 737, 744 (Alas. 1980). (The defendant argued that certain evidence was exculpatory and should have been presented to the grand jury, but the court held that there was no prosecutorial impropriety because that evidence "could not have been pre-

sented to the grand jury in isolation without creating a mis-impression" in the defendant's favor). Cf. *Commonwealth* v. *Lincoln*, 368 Mass. at 284-285.[5]

The defendants were able to explore at length at the appropriate time, the effect of Dr. Ladd's testimony on the victim's credibility. "In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial." *Costello* v. *United States*, 350 U.S. at 364. Because the prosecution has been "exonerated of 'playing an ignoble part,' nothing is left" of this issue upon which the defendants can urge a reversal of their convictions. *Commonwealth* v. *Lincoln*, 368 Mass. at 285.

2. *Alleged Violations of Procedural Rules.*

a. *Mass.R.Crim.P. 24(a) (1).* The defendants requested but were denied the opportunity to make opening statements to the jury after that of the Commonwealth, pursuant to that portion of rule 24 (a) (1) which provides: "The defendant may present an opening statement of his defense after the opening statement of the Commonwealth or after the close of the Commonwealth's evidence." 378 Mass. 895 (1979). The defendants represented to the judge that their opening statements would preview the evidence which they intended to present during the Commonwealth's case, through cross-examination of the victim, her mother, and Dr. Ladd, and through the victim's medical and psychiatric history. They stated that the reasonableness of their belief that such evidence would be forthcoming was supported by

---

[5] In this regard, we take note that the prosecutor did not advise the grand jury or present evidence showing that seminal fluid had been found on the victim's clothing and on the back seat of the car. Moreover, it should be remembered that the victim's more detailed recitation of the defendants' acts and the doctor's opinion were both given at the probable cause hearing, cf. *Myers* v. *Commonwealth*, 363 Mass. 843, 850 (1973); *Commonwealth* v. *St. Pierre*, 377 Mass. at 656 n.6, after which the defendants were bound over to the grand jury.

the probable cause hearing transcript, of which they had a copy, and documents which they had properly obtained. They argue that because they had a reasonable basis for their opening statements, (cf. *Commonwealth* v. *Martin*, 372 Mass. 412, 419-420 [1977]), it was error not to allow them to exercise their right of election under rule 24(a)(1).

In making this argument, the defendants have included in their joint brief a schedule, or table, of their proposed opening remarks with specific page references to the probable cause hearing and trial transcripts to demonstrate that their opening statements would have been proper. We make two critical observations about this schedule: (1) a comparable recitation of the proposed openings was never presented to the judge;[6] and (2) the evidence to support the intended opening statements concerning the victim's alleged use of marihuana and her psychiatric history was correctly excluded during the trial by the judge under the principles discussed in *Commonwealth* v. *Bohannon,* 376 Mass. 90 (1978).

A defendant's right to elect when to make an opening statement is subject to those limitations which may be imposed on the opening's content by defense counsel's own self-restraint in adhering to S.J.C. Rule 3:08, DF 12, as appearing in 382

---

[6] The defendants' assertions that the judge "cut them off" from doing this do not withstand a reading of the transcript of the side bar conference held on this issue. At this bench conference, the defendants described their proposed statements in more broad and general testimonial references than those specified and detailed on appeal. Moreover, the prosecutor challenged some of them. While the judge stated that he had little problem with an opening on the basis of Dr. Ladd's anticipated testimony, he was troubled by the defendants' other proposals. As arguments of counsel progressed, he voiced his concern about the prolonged duration of the conference in the jury's presence, although outside of its hearing. He stated that he should have been given "indication . . . ahead of time of problems of this nature." This concern would not have arisen had the defendants drafted for the judge a pretrial motion similar to the table they presented to us. This would have given the Commonwealth an opportunity to present a motion in limine, and, more important, it would have given the judge the ability to study the defendants' claims without consideration to an empanelled and waiting jury.

Mass. 807 (1981) ("It is unprofessional conduct for defense counsel to allude in his opening statement to any evidence unless there is reasonable basis for believing in good faith that such evidence will be tendered and admitted in evidence"), and by the judge in carrying out his or her responsibility to insure a fair trial for all the litigants.[7]  *Posell* v. *Herscovitz,* 237 Mass. 513, 514-515 (1921).  *Commonwealth* v. *Clark,* 292 Mass. 409, 410 (1935).  *Commonwealth* v. *Fazio,* 375 Mass. 451, 453-457 (1978).  See also Rule of Criminal Procedure 521(2) 10 U.L.A. (Master ed. 1974) ("Unless the court for cause otherwise permits . . . [c]ounsel for the defendant . . . may make an opening statement or may defer doing so until after the close of the State's case in chief").  Notwithstanding the good faith belief of defense counsel in the propriety of their proposed opening statements (see *Commonwealth* v. *Breese,* 381 Mass. 13, 15 [1980]; *Commonwealth* v. *LeBlanc, post* 960 [1981]), we see no abuse of discretion by the judge on this record in refusing to allow the defendants to present to the jury those opening statements as outlined to him.

Further, even were we persuaded that the defendants should have been allowed to make their intended opening statements, we would not view that as a basis for reversing their convictions.  The defendants claim that their inability to make opening remarks prevented them from meeting the critical need to dampen the jury's inflamed state and to reduce the tension created by the Commonwealth's proper yet descriptive opening statement.  They claim, in essence, that the receipt of the victim's testimony without advance knowledge of her "probable" postrape virginity and, hence, her questionable credibility, resulted in the "split" or "compromise" verdicts which must be reversed.  Compare

[7] The same restrictions pertain to the Commonwealth's opening statements.  See S.J.C. Rule 3:08, PF 11, 382 Mass. 802 (1981).  At the time of trial, October, 1979, Rule 3:08, PF 11, and DF 12, appeared in identical form as Rule 3:22A (1979).

*United States* v. *Harary*, 457 F.2d 471, 479 (2d Cir. 1972) ("Indeed, the jury must have encountered difficulty in agreeing on a verdict . . . and reached common ground through a compromise. Otherwise, we cannot comprehend how, on the basis of the evidence we have already recited, it could find that the facts established the offense of giving a mere gratuity and not outright bribery"). Contrast evidentiary analysis by Medina, J., dissenting, *id.* at 481-484.

We do not view the verdicts as being based on an irrational compromise rather than on the evidence presented by the Commonwealth on each indictment. The jury was free to believe or disbelieve the testimony of any witness, in whole or in part. The verdicts are strong indication that it did this, rationally and without distortion of the evidence. See *Carlen* v. *Gaw*, 292 Mass. 398, 399 (1935); *Commonwealth* v. *Ambers*, 370 Mass. 835, 840 n.3 (1976); Leach & Liacos, Massachusetts Evidence 111 (4th ed. 1967). We look no further than the verdicts themselves and the evidence in rejecting the defendants' assertions of prejudicial and harmful error.

b. *Mass.R.Crim.P. 24(b)*.[8] The defendants' contention, that the judge did not rule on their requests for jury instructions prior to their closing arguments to the jury, is unsupported by the record which shows, at best, a harmless technical error.[9]

---

[8] That portion of the rule which is here pertinent provides: "The judge shall inform counsel of his proposed action upon requests prior to their arguments to the jury. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." 378 Mass. 895 (1979).

[9] The transcript shows that the judge's initial review of the requests, which were not made a part of the record appendix, led him to characterize them as "run of the mill" concerns on the presumption of innocence, burdens of proof, and reasonable doubt, and he noted that any ruling he might make on the requests could have no effect on summations. Moreover, he advised the defendants that he would carefully review the requests before giving his charge, and if he should fail to include anything, they could see him at the bench before the jury retired to deliberate. At

Their further and more serious contention in this regard is that the judge failed to advise them prior to their summations that he was not going to charge the jury on those lesser offenses included within the greater crime of rape. The defendants, however, are in no position to make this contention for several reasons. There is nothing in the record to show that before making their closing arguments, the defendants asked the judge about his intended charge with specific reference to lesser included offenses. Additionally, neither the Commonwealth nor the defendant Dicenso made any discussion of these lesser offenses in their summations; the defendant McJunkin made only a fleeting reference to attempted rape, and, even then, it was in relation to the issue of the victim's credibility.[10] Moreover, after the summations but before the judge's charge, the defendants forcefully argued to the judge that there was no evidentiary basis to support instructions on the lesser offenses included in the greater offense of rape. See *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973); *Commonwealth* v. *Hogg*, 365 Mass. 290, 295 (1974). Finally, the jury, not having been instructed on the lesser included offenses, could not and did not consider them.

We find nothing in the record which gives support to the defendants' allegations of error or prejudice arising out of the judge's handling of their requests for jury instructions. *Commonwealth* v. *Pettingel*, 10 Mass. App. Ct. 916, 917 (1980).

c. *Mass.R.Crim.P. 28(d)(2)*. The defendants' final procedural claim is that they were sentenced without the benefit of the judge's possession of a comprehensive report

the conclusion of the judge's charge, the defendants requested further amplification only on the points of the presumption of innocence and admissions. The judge's instructions on those points are not a subject of this appeal.

[10] As indicated by statements of both defense counsel, as appearing in the transcript throughout the course of the trial, it was their position that the victim's testimony in its entirety was the vengeful fabrication of a woman scorned by the defendant McJunkin and whose credibility should be rejected in total.

from the probation department and thus, in violation of the due process guarantees of the Federal and Massachusetts Constitutions. This sweeping allegation is made on the basis that while the judge did have presentence investigation reports of the defendants, those reports did not include "such other available information as may be helpful to the court in the disposition of the case," as allowed by the rule. 378 Mass. 899 (1979). The defendants assert that sentencing should have been continued until such time as proper reports were prepared. We conclude that the defendants are again in no position to urge violations of the defendants' rights on sentencing (cf. *Commonwealth* v. *Martin*, 355 Mass. 296 [1969]), in view of the record before us.

The jury returned its verdicts on October 23, 1979, and the defendants do not dispute that during the delay between that date and the day of sentencing, January 10, 1980, they had ample opportunity to review the reports which had been compiled long previously. On no occasion during this time span did the defendants request that the judge focus the probation department's attention and investigation to alcohol and drug abuse by the defendants.[11] Their first reference to the possible existence of such problems was made on the day of sentencing, when they sought an additional continuance so that the matter could be explored by the probation department which would, in turn, then present the judge with "such other available information as may be helpful." Although the judge denied the continuance, he instructed defense counsel to provide him with any first hand information they, as defense counsel, had obtained in the way of "clinical evidence," or "examinations from a scientific field or person or organization as to a history of drugs or liquor." None was offered, notwithstanding the emphasis placed on this fact by defense counsel.

---

[11] The defendants' presentence investigation reports were received in evidence at the time of their sentencing. These reports had been prepared on September 22, 1978, the date of the defendants' arraignments, and they indicate that during their interviews with probation officers, the defendants disclaimed any drug or alcohol abuse.

Nothing having been done by the defendants to alert either the probation department or the judge to this consideration prior to the date of sentencing, we are hard put to understand how the defendants thought that it could have been included in any report prepared pursuant to rule 28(d)(2), especially in view of the fact that the only information the probation department had on this point was the defendants' denials of abuse. We cannot say that the judge abused his discretion in denying a continuance so that this information could be fully presented at a later date. He could anticipate that further investigation would reveal information he would deem necessary in sentencing the defendants.

The defendants' claims fall far short of constitutional dimensions, and to remand these matters for purposes of resentencing would constitute improper appellate interference with the judge's grave sentencing responsibilities. See *Commonwealth* v. *Appleby,* 380 Mass. 296, 312 (1980); *Commonwealth* v. *Moffett,* 383 Mass. 201, 216 (1980).

3. *The Motion to Be Seated at Counsel Table During the Trial.*

The defendants' contention that their seating arrangements, directly behind their respective attorneys but also directly in front of the dock, "in essence identified and presented them to the jury as security risks" is disposed of by the holding in *Commonwealth* v. *Lockley,* 381 Mass. 156, 165 (1980) ("Such seating would not tend to 'dilute the presumption of innocence' . . . and is permissible in the discretion of the judge").

4. *Admissibility of a Knife in Evidence.*

The judge allowed the Commonwealth to introduce in evidence a knife that the defendant Dicenso voluntarily turned over to the police at the time of his arrest three days after the incident, telling them that he always carried his knife on the front seat of his car. The victim testified that while she was not certain that the exhibit was the knife used on the day in question, it was "similar" to it.

We see nothing in this record sufficient to distinguish the issue from that presented in *Commonwealth* v. *Healey*, 9 Mass. App. Ct. 901 (1980), where we held that the judge did not abuse his discretion in allowing the Commonwealth to display to the jury a knife which an assault victim described as "similar" to that used against him by the defendant. See also *Commonwealth* v. *Ellis*, 373 Mass. 1, 7 (1977); *Commonwealth* v. *Mattias*, 8 Mass. App. Ct. 786, 792 (1979).

*Judgments affirmed.*