COMMONWEALTH vs. JOHN FRANCIL.

Norfolk.  October 15, 1982. — December 14, 1982.

Present: KASS, ROSE, & SMITH, JJ.

*Practice, Criminal,* Dismissal, Indictment, Grand jury proceedings, Assistance of counsel. *Grand Jury.*

A criminal defendant's contention, made for the first time on appeal, that the grand jury which indicted him heard insufficient evidence to establish his identity presented no substantial likelihood that a miscarriage of justice had occurred.  [36-37]

A single ambiguous answer by a police officer in the course of his testimony before a grand jury did not impair the integrity of the grand jury's proceeding so as to require that an indictment be dismissed. [38-39]

There was no merit to a criminal defendant's contention that a judge had created a conflict of interest, depriving him of counsel of his choice, where his original counsel had withdrawn from the case without objection or explanation following the judge's strongly adverse reaction to the grounds which counsel had urged in support of a pretrial motion to dismiss.  [39-41]

INDICTMENT found and returned in the Superior Court Department on September 22, 1980.

The case was tried before *Steadman, J.*

*Brownlow M. Speer* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

KASS, J.  Defendant stands convicted of breaking and entering in the daytime.[1]  On appeal he argues that there was no evidence placed before the grand jury that he had committed the offense and that the indictment handed up was, therefore, without evidentiary support; that the integ-

---

[1] G. L. c. 266, § 17.

rity of the grand jury was impaired; and that he was deprived of his right to counsel of his choice. We affirm the conviction.

The sole witness heard by the grand jury was James Leahy, a Braintree police officer who, in addition to what he learned from his investigation and those of fellow officers, based much of his testimony on statements made by the victim of the crime, Ralph Sassi. In summary, Leahy's account was as follows: Three men entered Sassi's apartment by forcing open the sliding glass doors of a balcony. Sassi, who is legally blind but has some slight vision, recognized the voice of one of the men as that of a cab driver for Shore Taxi whom he knew as John Smith. That driver had taken Sassi from the Quincy Square MBTA stop to his Braintree apartment at least seven times, and had been in his apartment on two occasions. During the course of the theft, the man whose voice Sassi recognized was addressed as John by one of the perpetrators. Among the items stolen from the apartment were receipts the cab driver had given to the victim, which had been signed "John Smith."[2]

Leahy's investigation took him to the offices of the Shore Taxi Company. No John Smith was employed there, but Shore Taxi had one employee with the first name, John; his last name was Francil. Through his investigation Leahy eliminated the other drivers as suspects, and satisfied himself that John Smith and John Francil were one and the same.

1. *Sufficiency of the Evidence.*

On appeal the defendant urges for the first time that the grand jury failed to "hear sufficient evidence to establish the identity of the accused." In so doing, he relies on *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), which was decided well after the instant case was tried. We consider

---

[2] Although "John Smith" is thought of as a quintessential pseudonym, the name is not infallibly a fake. There are twenty-nine John Smiths in the 1982 Boston telephone directory, as well as eleven John Does and two Jane Does.

the issue only to determine whether there has been a showing of grave prejudice or of substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Roberts*, 378 Mass. 116, 123 (1979). There was none.

*Commonwealth* v. *McCarthy*, *supra*, dealt with an absence of any evidence of criminal activity by the defendant. See also *Connor* v. *Commonwealth*, 363 Mass. 572, 577 (1973). The *McCarthy* decision did not alter the established principle that when there is evidence of criminal activity by the defendant put before the grand jury, a court will not sift through that evidence to test whether it is enough or whether it is persuasive. *Commonwealth* v. *Galvin*, 323 Mass. 205, 211-212 (1948). *Commonwealth* v. *Gibson*, 368 Mass. 518, 524-525 (1975). *Commonwealth* v. *Robinson*, 373 Mass. 591, 592-593 (1977). *Commonwealth* v. *Saya*, 14 Mass. App. Ct. 509, 514 (1982). As Mr. Justice Black observed in *Costello* v. *United States*, 350 U.S. 359, 363 (1956), "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed." Compare Model Code of Pre-Arraignment Procedure § 340.5 (1975).

In this case the grand jury heard evidence which, at the least, wove a thread of identification around the defendant. The police officer had testified that: save for the defendant, he had eliminated as suspects all the drivers on Shore Taxi's roster; the only driver named "John" whom Shore Taxi employed was the defendant; and the victim, during the course of the break into his apartment, heard one of the three persons who broke in address as "John" the man whose voice the victim recognized as that of the taxi driver. It was not a defect in the evidence presented to the grand jury that a fair portion of it was hearsay. Mass.R.Crim.P. 4(c), 378 Mass. 849 (1979). *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 654-657 (1979).[3]

---

[3] Evidence which would be competent at trial is, of course, preferable. *St. Pierre*, at 656.

## 2. *Integrity of the Proceedings.*

Based on the series of questions and answers set out in the margin,[4] the defendant moved that the indictment ought to be dismissed because the integrity of the grand jury proceeding had been impaired. See *Commonwealth* v. *Gibson,* 368 Mass. at 525. Specifically, the defendant maintains that the proceedings became tainted because Officer Leahy's answers to the grand jury were inaccurate and misleading and that the stain deepened when the prosecutor failed to correct the inaccuracy.

After hearing, the trial judge found that the officer's testimony "was an honest presentation of his views and opinions held, based upon substantive evidence and facts that he had discovered and was privy to during the course of his investigation." Furthermore, the judge found "that there was no intent on the part of this officer to mislead the grand jury" and concluded that "as a result of [the officer's] testifying . . . and also by presentation . . . made by . . . the Assistant District Attorney, the integrity of the grand jury was not in any material way . . . impaired."

---

[4]

| | |
|---|---|
| THE PROSECUTOR: | "And did you subsequently identify Mr. Francil, in fact, as the John Smith, driving the Shore Taxi?" |
| OFFICER LEAHY: | "Yes, sir." |
| | " . . . ." |
| JUROR: | "How did you identify John Smith as the one driving the taxi?" |
| OFFICER LEAHY: | "These receipts that the victim received from the cabdriver are all signed John Smith. There is no John Smith working for the taxi company. There is a John Francil. . . ." |
| THE PROSECUTOR: | "And did you, in fact, eliminate other drivers of Shore Taxi?" |
| OFFICER LEAHY: | "Yes, sir." |
| JUROR: | "And the victim has since identified John Smith?" |
| OFFICER LEAHY: | "No. The victim has told us it was John Smith, who was known as John Francil to us." |
| JUROR: | "But he has identified him?" |
| OFFICER LEAHY: | "Yes, sir." |

Nothing in the record indicates that the witness had perjured himself on a fact material to the indictment, cf. *United States* v. *Basurto,* 497 F.2d 781, 785 (9th Cir. 1974), or that the assistant district attorney had "played an ignoble part" by knowingly relying on false testimony. *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 579 (1982). See also *Commonwealth* v. *Salman,* 387 Mass. 160, 166-167 (1982). Nor is this a case where the grand jury was deceived into believing that hearsay evidence was direct testimony, cf. *United States* v. *Estepa,* 471 F.2d 1132, 1137 (2d Cir. 1972), or where the decision whether to indict would likely have been different had first-hand testimony been presented. *Commonwealth* v. *Salman, supra. United States* v. *Cruz,* 478 F.2d 408, 410-411 (5th Cir.), cert. denied sub nom. *Aleman* v. *United States,* 414 U.S. 910 (1973). Rather, a single answer was ambiguous in an otherwise unremarkable presentation of the evidence. Given Leahy's candid response that the victim Sassi had not made the link between Smith and Francil, it is unlikely the jurors understood Leahy's testimony as indicating more than that during the course of the theft Sassi had identified a taxi driver known to him as John Smith. Compare *Commonwealth* v. *Lincoln,* 368 Mass. 281, 283-284 (1975), where a similar ambiguous statement concerning identification was not found to undermine the integrity of the grand jury process. Neither was it considered negligent when the prosecutor failed "instantly to perceive and correct the possible mistake or ambiguity." *Id.* at 284. We are of opinion that the integrity of the grand jury process was not impaired and that there was no basis for defendant's request that the indictment be dismissed. *Commonwealth* v. *Gibson,* 368 Mass. at 525. *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 612-614 (1981).

3. *Deprivation of Counsel of Choice.*

After the indictment was returned, defendant's first attorney of record filed a motion to dismiss the indictment, alleging that the testimony set out in note 4, *supra,* "was false, [that] the said witness knew [it] was false and [that]

the Commonwealth knew or should have known [it] was false." That motion was denied. The motion judge, however, was troubled by the assertions of official misconduct and ordered a transcript of the hearing on the motion. Upon examination of that transcript and the grand jury minutes, the judge heard counsel further and concluded that the allegations of perjury and subornation of perjury were "totally unwarranted, unjustified, reckless, vicious and totally uncalled for."[5]  Such was his displeasure that he determined to send a transcript of the second hearing to the Board of Bar Overseers, "and let the transcript speak for itself."  Cognizant of his strong reaction, the judge vacated his ruling on the motion to dismiss and disqualified himself so that another judge could rule on it.  Six weeks later, counsel of record withdrew from the case without objection or explanation and defendant's second counsel, Mr. Kane, entered his appearance.

Defendant does not claim that Mr. Kane's representation was in any way defective;[6] the essence of his complaint is that the motion judge's actions created a conflict of interest which deprived him of the counsel he had retained. Although a court may not arbitrarily dismiss defendant's counsel of choice, *United States* v. *Laura,* 607 F.2d 52, 55-57 (3d Cir. 1979), trying a case is not a "parlor game," and counsel must be prepared to support their actions in the face of a strong reaction by the trial court. *Allen* v. *Snow,* 635 F.2d 12, 14 (1st Cir. 1980), cert. denied, 451 U.S. 910 (1981).  The motion judge took appropriate action to protect the defendant's right to an impartial decision on his mo-

---

[5] As the judge observed, there is a palpable difference between moving to dismiss because the jury may have been misled by an ambiguity and charging the police and the district attorney with commission of crimes, i.e., perjury and suborning perjury.

[6] The record discloses that Mr. Kane had ample time to prepare for trial, zealously pressed pretrial motions, challenged the Commonwealth's evidence, and presented an alibi defense.  The defendant expressed no dissatisfaction with either the substitution of counsel or with Mr. Kane's representation.

tion by vacating his judgment and disqualifying himself.[7] The court left for counsel the choice of how to proceed on the motion to dismiss. *Commonwealth* v. *Allen,* 379 Mass. 564, 574-575 (1980). See also *Allen* v. *Snow, supra* at 14. In the absence of any impropriety by the court and the absence of objection by the defendant to his attorney's withdrawal,[8] his complaint that he was deprived of his counsel of choice smacks of afterthought.

*Judgment affirmed.*

---

[7] See S.J.C. Rule 3:09, Canon 3(C), as amended, 382 Mass. 811 (1981). Compare *United States* v. *Laura,* 607 F.2d at 58-59 & n.6.

[8] The right to be represented by counsel of choice is well recognized, *Lindsey* v. *Commonwealth,* 331 Mass. 1, 5 (1954); *United States* v. *Laura, supra*; however, this right is not absolute. *Commonwealth* v. *Connor,* 381 Mass. 500, 503 (1980). *United States ex rel. Carey* v. *Rundle,* 409 F.2d 1210, 1215 (3d Cir. 1969), cert. denied, 397 U.S. 946 (1970). If the defendant wishes to retain an attorney burdened by a conflict of interest, he can do so only after full disclosure and an unequivocal waiver. *Commonwealth* v. *Connor,* 381 Mass. at 503-506. *Commonwealth* v. *Hodge,* 386 Mass. 165, 170 (1982). *United States* v. *Bernstein,* 533 F.2d 775, 788 (2d Cir.), cert. denied, 429 U.S. 998 (1976).