COMMONWEALTH *vs.* WILLIAM S. McNARY.

Suffolk.    March 30, 1923. — June 21, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & CARROLL, JJ.

*Contempt of Court. Practice, Criminal,* Exceptions. *Writ of Error. Grand
Jury.*

The proper method of bringing to this court the propriety of a ruling of law
at a trial for contempt of court is by a writ of error; it is doubtful whether
exceptions lie in such a case.

The grand jury is a constituent part of the court.

The Superior Court has the power and is charged with the duty of punishing for contempt any one whose conduct interferes with or has a tendency to obstruct the grand jury.

Rarely exceptional cases may arise justifying a departure from the principle that the grand jury, in the regular discharge of their duty, cannot admit nor hear any testimony but such as is properly produced to them in support of the prosecution; if, however, the truth is not sufficiently demonstrated by such testimony, it is said that they properly may seek other information relative to mere facts but should not proceed further, and the grand jury must not be converted into a traverse or trial jury by any such means. Per RUGG, C.J.

While the affairs of the Hanover Trust Company were under investigation by a special grand jury of Suffolk County, one, who during the period covered by the investigation was its treasurer, wrote and mailed to each member of that jury the following letter: "To the Foreman, Clerk and Members of the Suffolk County Special Grand Jury: Gentlemen, — The affairs of the Hanover Trust Company are under investigation by your body and my official actions as an active officer, Treasurer from October, 1919, to August, 1920, and as a Director previously, will be under consideration. I most respectfully request that I be allowed to appear before your body as I was in the two previous Grand Jury investigations of these affairs when 'No Bills' were reported and I hereby tender my services as a voluntary witness, waiving all immunity. Your duty is to reach a fair and just conclusion without fear or favor and my knowledge of these matters will be a great aid and benefit to you in arriving at such a result. You have the undoubted right to call in any witness you please, and I hope as a matter of fairness and justice that I may be so called. I most respectfully request that you also read and consider the testimony before the two previous Grand Juries, as is your right before arriving at a finding." The writer was found guilty on a complaint against him for contempt of court. Upon a review of the conviction by this court, it was *held,* that the letter as an entirety as well as in its parts warranted a finding that its design was and effect would be to obstruct the grand jury in the performance of its duties, and warranted a finding beyond a reasonable doubt that the writer and sender was guilty of contempt of court.

*Whether* the final paragraph of the letter, to the effect that the grand jury had a right to read and consider the testimony before the two previous grand juries, was sound as an unqualified proposition of law, it was not necessary to decide; but it *was stated,* that, if it be assumed that such testimony may be examined in appropriate instances, the purposes for which it may be so examined, the limitation to which it may be subject, its probative force and the weight to be attributed to it in given circumstances are manifestly subjects to be explained by impartial instructions and clearly are improper matters for intrusion of legal advice by one having a personal interest in the outcome of the investigation.

COMPLAINT, filed in the Superior Court by John Weston Allen, then Attorney General, on October 5, 1922, alleging that the defendant had been guilty of contempt of court

in communicating by a letter described in the opinion with the grand jury while it was considering matters relative to the conduct and management of the business of the Hanover Trust Company.

In the Superior Court, the complaint was heard by *Bishop,* J. Material evidence and findings and rulings by the trial judge are described in the opinion. The defendant was adjudged in contempt, and alleged exceptions.

*W. G. Thompson,* (*G. E. Mears & J. W. Corcoran* with him,) for the defendant.

*L. Goldberg,* Assistant Attorney General, (*A. Hurwitz,* Assistant Attorney General, & *J. W. Allen* with him,) for the Commonwealth.

Rugg, C.J. This is a proceeding for contempt of court. It comes before us on exceptions taken by the defendant at the hearing before a judge of the Superior Court. The proper way to raise an error of law in such case is by writ of error. *Hurley* v. *Commonwealth,* 188 Mass. 443. There is grave doubt whether exceptions lie in a case for contempt. *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310. We do not pause to discuss or to decide that question. Whether the rulings were subject to exceptions need not be considered because in any event the ultimate decision must be against the defendant, and in such case there seems to be no objection to stating the grounds of substantive law which support the result. *Browne* v. *Turner,* 176 Mass. 9, 12. *Commonwealth* v. *McElhaney,* 111 Mass. 439, 440. *Newton Rubber Works* v. *de Las Casas,* 198 Mass. 156. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 410. *Codman* v. *Crocker,* 203 Mass. 146, 148. *DeFerrari* v. *DeFerrari,* 220 Mass. 38, 40. *Knights* v. *Treasurer & Receiver General,* 237 Mass. 493, 494. *Commonwealth* v. *Cronin,* 245 Mass. 163.

There is no dispute about the essential facts. The affairs of the Hanover Trust Company were under investigation by a special grand jury in September, 1922. Each member of that grand jury before or during its deliberations received a letter written and sent by the defendant, of the tenor following:

"53 State Street, Room 311,

Boston, Mass., September 23, 1922.

To the Foreman, Clerk and Members of the Suffolk County Special Grand Jury:

"Gentlemen, — The affairs of the Hanover Trust Company are under investigation by your body and my official actions as an active officer, Treasurer from October, 1919, to August, 1920, and as a Director previously, will be under consideration.

"I most respectfully request that I be allowed to appear before your body as I was in the two previous Grand Jury investigations of these affairs when 'No Bills' were reported and I hereby tender my services as a voluntary witness, waiving all immunity.

"Your duty is to reach a fair and just conclusion without fear or favor and my knowledge of these matters will be a great aid and benefit to you in arriving at such a result.

"You have the undoubted right to call in any witness you please, and I hope as a matter of fairness and justice that I may be so called.

"I most respectfully request that you also read and consider the testimony before the two previous Grand Juries, as is your right before arriving at a finding.

Yours respectfully,

[signed] Wm. S. McNary.

Telephone — Congress 6566."

The special grand jury voted to grant a hearing to the defendant as requested in his letter. He voluntarily appeared before that grand jury, was advised of his rights, waived immunity and testified regarding the matters of the Hanover Trust Company and his connection therewith. He had requested two previous grand juries for permission to appear before them while investigating the same affairs, had been allowed to and did in fact appear before them and "No Bills" were reported by them.

The judge filed written findings, among which was this: "I find that this letter tended to interfere with the proper administration of justice, to prevent the Special Grand Jurors from considering in the manner required of them by

law the matters then being inquired into by them, and to prejudice the minds of the Special Grand Jurors."

The judge ruled that no inference could be drawn against the defendant from his failure to testify, and that he could not be found guilty unless the complaint against him was proved beyond a reasonable doubt, and then adjudged the defendant to be in contempt by reason of having mailed and caused to be mailed the letter of September 22, 1922.

The single point for decision is whether as matter of law the sending of the letter to the members of the grand jury, in view of all the circumstances disclosed, could have been found to be a contempt of court.

The grand jury is a constituent part of the court. Presentment by grand jury in cases to which it is applicable is a part of the law of the land and preserved by art. 12 of the Declaration of Rights of the Constitution. The grand jury is a branch or appendage of the court. It is organized and empowered to discharge its appropriate functions by virtue of being empanelled and sworn in open court as prescribed by law. It sits and deliberates under the authority of the court. It may at any time apply to the court for instructions and invoke its power for aid and protection in the performance of its duties. These attributes are essential in order to enable it to discharge its obligations and do its work efficiently and without molestation in the protection of the public against crime and of the individual against oppression. *Heard* v. *Pierce*, 8 Cush. 338. *Commonwealth* v. *Bannon*, 97 Mass. 214. *Commonwealth* v. *Sanborn*, 116 Mass. 61.

It is an inevitable consequence of these principles that the court has the power and is charged with the duty of punishing for contempt any one whose conduct interferes with or has a tendency to obstruct the grand jury. Such conduct is as much contempt and punishable as such as that which interferes with or has a tendency to obstruct the administration of justice in the courts in another form or manner. It may be as necessary to put forth the power of the court to protect itself against contempts committed against this instrumentality of justice as against others. It is a con-

tempt of the court of which the grand jury is a part to obstruct its normal and legal functions. *Cartwright's Case,* 114 Mass. 230. *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294. *Hurley* v. *Commonwealth,* 188 Mass. 443. *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass. 449. *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310.

It is said in the chapter of Davis' Precedents concerning the " Office and Duty of Grand Jurors," pages 23, 24, " The grand jury hear evidence only in support of the charge, and not in exculpation of the party accused; and, in general, they ought never to hear any other evidence than that which is produced by the government. But as they are sworn to present the truth, as it comes to their knowledge, which necessarily requires investigation, if, in the course of such investigation, it appears that there are other witnesses than those produced for the prosecution, and the grand jury are actually convinced that their testimony may be material and pertinent, and of such a nature as would elucidate or explain the evidence for the government, and lead them to a more perfect knowledge of the merits of the case, it is said they may require the testimony of such witnesses. But in this case, great judgment and extreme caution ought to be used, to guard against the danger of hearing evidence on the part of the defendant, and thus changing the institution of a grand jury to that of a traverse jury; by which the whole merits of the case may be decided in a private, instead of a public, tribunal. The grand jury, in the regular discharge of their duty, cannot admit, or hear any testimony, but such as is properly produced to them in support of the prosecution; if, however, the truth is not, by such testimony, sufficiently demonstrated, it is said they may properly seek other information, relative to mere facts, but cannot proceed further." This author, solicitor general for about thirty years prior to 1832, was described in *Perkins* v. *Stevens,* 24 Pick. 277, at page 280, as " a former distinguished law officer of this Commonwealth, whose long experience in the administration of criminal law gave to his opinions the weight of authorities."

This statement as to proper practice before the grand

jury is in general correct. Rarely, exceptional cases may perhaps arise justifying a departure from the principle there declared. Apparently there has been considerable departure from right procedure as illustrated by the case at bar. See *Essgee Co. of China* v. *United States,* 262 U. S. 151. It was said in argument that this correct practice had been much relaxed in Suffolk County. The grand jury cannot rightly be converted into a traverse or trial jury by any such means. *Baker* v. *Fales,* 16 Mass. 487, 520. *Lebowitch, petitioner,* 235 Mass. 357, 362.

The letter of the defendant of September 23, 1922, in the light of the circumstances under which it was sent, was in substance such as to warrant a finding that the writer and sender was guilty of contempt beyond reasonable doubt. The assertion in the letter that he had been permitted to appear before two previous grand jury investigations and that no bills had been returned related to matters having no relevancy to the investigation then being conducted. Whether the evidence would be the same could not be foretold. The action of the previous inquests may have been wrong. Whether the defendant or others ought to have been indicted by this special grand jury was a question which its members must decide on their own official oaths in the exercise of their own sound judgment on the evidence presented to them. What others had done under more or less similar circumstances was an impertinent factor. The admonition as to the duty of the grand jury was an attempted usurpation of prerogative of the court. Whatever might be said concerning it if uttered by the court as a part of comprehensive instructions, it was at best a partial and inadequate statement of the scope of the obligations of a grand jury. In its context it invited a construction contrary to the full performance of their duty. The declaration of the letter that the grand jury had " the undoubted right to call in any witness you please " was manifestly not correct, as already has been pointed out. The grand jury is not a trial jury and ought not ordinarily to investigate the defendant's evidence. It often would greatly embarrass a defendant in his trial if all his witnesses could be called as a

matter of course for examination by the grand jury, and if the defendant could be called and compelled either to testify or claim his privilege. The invocation of "fairness and justice," in support of this defendant's appeal to be called as a witness, in the connection in which it was used was a subversion of the fundamental conception of the grand jury. "Fairness and justice" imply equality of treatment and absence of favoritism. If "fairness and justice" required that this defendant be called as a witness, they require that every one whose "actions," whether "official" or otherwise are under investigation by a grand jury be called before it as a witness. Whether the final paragraph of the letter, to the effect that the grand jury had a right to read and consider the testimony before the two previous grand juries, was sound as an unqualified proposition of law, need not be decided. G. L. c. 277, § 5; c. 221, § 86. Whether it is the "right" of one grand jury "to read and consider" "testimony" given before earlier grand jurors, and, if so, the nature and extent of that right, never, so far as we are aware, has been decided in this Commonwealth. Decisions hitherto rendered do not touch this point. *Commonwealth* v. *Hill,* 11 Cush. 137. *Commonwealth* v. *Mead,* 12 Gray, 167, 170. *Way* v. *Butterworth,* 106 Mass. 75. *New Hampshire Fire Ins. Co.* v. *Healey,* 151 Mass. 537. *Commonwealth* v. *Chance,* 174 Mass. 245, 248. *Commonwealth* v. *MacKenzie,* 211 Mass. 578, 580. *Commonwealth* v. *Harris,* 231 Mass. 584, 586. *Commonwealth* v. *Homer,* 235 Mass. 526, 533. *Attorney General* v. *Tufts,* 239 Mass. 458, 523. *Attorney General* v. *Pelletier,* 240 Mass. 264, 307, 308. If it be assumed that such testimony may be examined in appropriate instances, the purposes for which it may be so examined, the limitation to which it may be subject, its probative force and the weight to be attributed to it under given circumstances, are manifestly subjects to be explained by impartial instructions and clearly improper matters for intrusion of legal advice by one having a personal interest in the outcome of the investigation. These parts of the letter justified the conclusion that they were calculated to interfere with the proper administration of justice and had a tendency to prejudice the minds

of the grand jurors. The letter as an entirety as well as in its parts warranted a finding that its design and effect would be to obstruct the grand jury in the performance of its duties. *Commonwealth* v. *Woodward*, 157 Mass. 516.

It has been strongly urged that the only protection of the innocent against unfounded accusations instituted or nourished by wicked or corrupt prosecuting officers (with disavowal of any reference to the case at bar) is an appeal to the grand jury to be allowed to testify. Whether such circumstances would justify direct communication with the members of the grand jury, or whether application ought to be made to the judge, need not here be decided or discussed. The letter of the defendant was not of that import and might have been found to transcend any proper limitations. See for an interesting discussion of the general subject, *Commonwealth* v. *Crans*, 2 Penn. L. J. 172.

The cases relied on by the defendant, like *Tucker's Case*, 8 Mass. 286, *Commonwealth* v. *Woodward*, 157 Mass. 516, *Commonwealth* v. *Hayden*, 163 Mass. 453, plainly are distinguishable. In those cases the circumstance that a single grand juror had or had secured information incompatible with impartiality was held not to invalidate the action of the grand jury. It is an ancient principle of grand jury procedure that they may act on personal knowledge or may testify under oath before their fellows. That is far different from interference by an outsider through a letter to each grand juror such as here is disclosed.

*Exceptions overruled.*