COMMONWEALTH vs. KEITH D. SALMAN
(and companion cases[1]).

Suffolk.  May 5, 1982. — August 18, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Motion to dismiss, Indictment, Grand jury proceed-
ing.  *Grand Jury.*

A judge who dismissed thirty-seven out of sixty-one indictments pending
   against two defendants, with the understanding that the Common-
   wealth might seek new indictments on other evidence, acted properly
   within his discretion, where the information before him suggested that
   a number of the indictments had been obtained on the basis of false
   testimony by the police detective who had been the sole witness before
   the grand jury, and where the Commonwealth, despite its efforts in
   good faith to do so, had been unable to provide further information re-
   quired by the judge.  [162-168]

INDICTMENTS found and returned in the Superior Court
Department, two on November 18, 1980, and thirty-five on
November 19, 1980.

A motion to dismiss was heard by *Zobel, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*James R. Brunette*, Assistant District Attorney, for the
Commonwealth.

*Walter B. Prince* for Edward Barton, Jr.

*Judd J. Carhart* for Keith D. Salman.

HENNESSEY, C.J.  This is an appeal by the Commonwealth
from so much of an order of a Superior Court judge as
dismisses without prejudice thirty-seven indictments against
the defendants, Keith Salman and Edward Barton, Jr.

---

[1] Of the companion cases, seventeen are against Keith D. Salman and
nineteen are against Edward Barton, Jr.

The judge's order addressed a motion to dismiss a total of sixty-one indictments, which charged, inter alia, armed robbery, assault and battery, and receiving stolen property. Thirty-two of the sixty-one indictments were against Barton; twenty-nine were against Salman. The judge denied the defendants' motion as to thirteen of the indictments, and the Commonwealth was free to proceed to trial against the defendants on those indictments. Another eleven indictments were dismissed without objection by the Commonwealth. The remaining thirty-seven indictments, which are the subject of this appeal (nineteen against Barton and eighteen against Salman), were dismissed, reserving to the Commonwealth, however, the right to reindict within the period permitted by the statute of limitations and on evidence other than that originally presented to the grand jury. We affirm the judge's order.

Since, as will be seen, our conclusions are based in large part on the special circumstances of this case, we state the facts in some detail. On June 17, 1980, Salman and Barton were arrested and charged with having committed a number of armed robberies. In November of the same year, a Suffolk County grand jury returned sixty-one indictments against the defendants. Most of the sixty-one indictments were obtained solely as a result of the testimony of only one grand jury witness, Detective Arthur Linsky of the Boston police department.

On June 25, 1981, the defendants filed a motion to dismiss the indictments, alleging as grounds therefor that false testimony had knowingly been presented to the grand jury, that the integrity of the grand jury process had thereby been impaired, and that all of the indictments should be dismissed as a prophylactic measure. Attached to the defendants' motion were minutes of certain grand jury proceedings. These minutes, which have been made part of the record in this case, show that an assistant district attorney for Suffolk County presented before the grand jury, in November, 1980, evidence suggesting that one Susan Condry had been robbed by the defendants Barton and Salman.

The evidence was presented through the sworn hearsay testimony of Detective Linsky. He testified that on June 11, 1980, Condry was robbed by two black males. Detective Linsky further testified that twenty-five photographs were shown to Condry and that she identified Barton and Salman as her assailants. Susan Condry did not testify before the grand jury. The grand jury returned two indictments against the defendants for robbery.

Two weeks later, the same assistant district attorney presented similar evidence to the same grand jury. This time, a different Boston police detective testified that, immediately after being robbed, Susan Condry went to the police station and positively identified one Sherman A. Carter from a series of photographs. Condry also appeared before the grand jury, and testified that on June 14, 1980, she positively identified Sherman A. Carter as her assailant. She further stated that she identified Carter again at a probable cause hearing at the Brighton District Court.

During the same grand jury proceedings in November, 1980, the Commonwealth also obtained six indictments against the defendants relative to another robbery. Detective Linsky testified concerning the robbery, on June 14, 1980, of Karen Eggert and Frank Cortese. The detective testified that the victims, by way of photographs, identified Barton and Salman as the perpetrators of the robbery. The victims did not appear before the grand jury. Approximately three weeks later, the same assistant district attorney presented similar evidence to the same grand jury. A different Boston police detective testified that on June 15, 1980, Cortese positively identified Sherman A. Carter as the perpetrator. Karen Eggert also appeared and testified before the grand jury. She stated that, although she could not positively identify Carter as the robber, her friend Cortese was very sure that Carter was the assailant. The grand jury returned two indictments against Carter for the robbery of Eggert and Cortese.

A hearing on the defendants' motion to dismiss the indictments was held before a Superior Court judge on July 15,

1981.  At the hearing the Commonwealth made no objection to the dismissal of the eight indictments relating to the robberies of Condry, Eggert, and Cortese, and the judge granted the defendants' motion as to those indictments.  The defendants argued that, since a question had been raised concerning the reliability of Detective Linsky's testimony before the grand jury, the remaining indictments should also be dismissed.  The judge declined to dismiss the remaining indictments.  However, he did conclude that the defendants were entitled to be put in a position where they could inquire into the validity of the remaining indictments.  The judge therefore instructed the Commonwealth to provide the defendants with (1) a list of victims involved in the indictments based solely on Detective Linsky's testimony; (2) the current addresses of the victims involved in those "Linsky cases"; and (3) a letter signed by the Commonwealth designed to encourage each witness to speak to any defense investigator.  The judge also determined that the defendants' motion, with respect to the remaining indictments, was to be held under advisement.

On September 15, 1981, another hearing was held at the request of the defendants.  A motion to dismiss nine indictments was filed with the court together with minutes of certain grand jury proceedings and an affidavit of a defense investigator who had previously been appointed by the court.  Those papers indicated that, with respect to three of the then pending indictments, Detective Linsky had testified before the grand jury, in November, 1980, that each victim had been shown a series of photographs and had identified one or both of the defendants as the perpetrators of the offenses.  According to the affidavit of the defense investigator, however, the victims had never been shown any photographs by the Boston police department.  With respect to the other six indictments challenged in the motion, the papers suggested less significant discrepancies between Detective Linsky's testimony and statements made to the defense investigator.

At the hearing, the defendants complained that they had been unable to resolve fully the questions raised relative to

all the pending indictments because the Commonwealth had produced addresses of only ten victims. The defendants did acknowledge the Commonwealth's good faith effort to produce the addresses. The defendants asked for an evidentiary hearing in which the victims of the alleged crimes could appear before the court and testify as to the validity and accuracy of Detective Linsky's grand jury testimony. The judge agreed that the allegations of impropriety were sufficient to warrant further inquiry into the grand jury process. He concluded that a further hearing should be held, at which time the Commonwealth should be prepared to list which indictments it was prepared to nolle prosequi, and which indictments it would assert to be valid. Of those which the Commonwealth would declare to be valid, the defendants were to decide which indictments were to be resolved at trial, and which they would challenge as invalid. As to the indictments challenged as invalid, an evidentiary hearing could later be held to determine their validity. A date convenient to the Commonwealth was set for the next hearing. The judge also ordered that Detective Linsky not work on the cases during the pendency of the defendants' motion.

The third hearing was held on October 7, 1981. The Commonwealth reported that it had been unable to comply entirely with the judge's order. As to three of the indictments challenged at the previous hearing, the Commonwealth stated that it would not oppose their dismissal; with respect to thirteen indictments, it asserted that those were valid and that the Commonwealth was ready to proceed to trial on them; and with respect to the remaining thirty-seven indictments, the Commonwealth stated that it had not completed its investigation and was therefore not prepared to state its position as to their validity. The defendants renewed their request that all of the pending indictments be dismissed, and they repeated their frustration at not being able to investigate the validity of the remaining indictments. The judge granted the defendants' motion as to the three uncontested indictments. He denied the motion

as to the thirteen indictments on which the Commonwealth was prepared to go forward, reserving to the defendants, however, the right at a future hearing to raise the question of the propriety of the grand jury proceedings which produced those indictments. As to the remaining thirty-seven indictments, the judge stated that the Commonwealth had had "ample time" to "[form] a conclusion as to the condition of the evidence that supported the indictments." Accordingly, he allowed the motion to dismiss, with the understanding, however, that the Commonwealth could seek new indictments on other evidence before another grand jury. The Commonwealth's objection was noted.

The Commonwealth characterizes the judge's order of July 15, 1981, as a discovery order.[2] It maintains that the drastic sanction of dismissing indictments for failure to comply with a discovery order should only be imposed if the failure to comply is due to the deliberate or negligent conduct of the prosecution. See *Commonwealth* v. *Politano*, 4 Mass. App. Ct. 805 (1976). Cf. *United States* v. *Seafarers Int'l Union*, 343 F. Supp. 779, 781-784 (E.D.N.Y. 1972).[3] The Commonwealth argues that, since it attempted in good faith to comply with the order, the judge abused his discretion in dismissing the indictments.

The Commonwealth's argument ignores the important facts underlying the judge's order. The defendants in their motion had alleged that the Commonwealth, through the Boston police department "knowingly and intentionally represented false and misleading testimony to the Grand

---

[2] At oral argument before this court the Commonwealth suggested that there was no "order" made by the judge but only a "request." Although a written order was never issued, the transcript makes it quite clear that the judge's instructions were mandatory.

[3] The pertinent rule of criminal procedure is Mass. R. Crim. P. 14 (c)(1), 378 Mass. 874 (1979), which provides: "For failure to comply with any discovery order issued pursuant to this rule, the judge may make a further order for discovery, grant a continuance, or enter such other order as he deems just under the circumstances."

Jury." The information before the judge suggested that a number of the indictments may indeed have been obtained on the basis of testimony that was false, and, at least with respect to three of the indictments attacked at the second hearing, the information available to the judge was such as to raise a suspicion that certain indictments may have been obtained on the basis of knowingly false testimony. Detective Linsky, who gave the testimony, was also primarily responsible for procuring most of the other indictments. Substantial doubts were thus raised about the validity of those other indictments. We think the judge was correct in concluding that the defendants were entitled to a further inquiry into the grand jury proceedings.

It is the general rule that a court should not inquire into the adequacy or competency of the evidence upon which an indictment is based. *Commonwealth* v. *Robinson,* 373 Mass. 591, 592 (1977), and cases cited. See *Commonwealth* v. *McCarthy,* 385 Mass. 160, 161-162 (1982). However, when it appears that the integrity of the grand jury process has been impaired, a defendant may attack the validity of the indictment by way of a motion to dismiss. See *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 654-657 (1979). There can be no doubt that the knowing use by the Commonwealth or one of its agents of false testimony to procure an indictment is a ground for dismissing the indictment. See *Commonwealth* v. *St. Pierre, supra* at 655.[4] Thus, when a defendant makes a substantial preliminary showing that false testimony was knowingly presented to the grand jury by the Commonwealth or one of its agents, we think he is entitled to an evidentiary hearing to resolve the matter. Cf.

---

[4] We do not think it necessary to determine whether an indictment based on false testimony should be dismissed when the Commonwealth had no knowledge of the falsity at the time the testimony was presented. See, e.g., *United States* v. *Udziela,* 671 F.2d 995, 999-1001 (7th Cir. 1982); *United States* v. *Flaherty,* 668 F.2d 566, 583-585 (1st Cir. 1981); *United States* v. *Guillette,* 547 F.2d 743, 752-753 (2d Cir. 1976), cert. denied, 434 U.S. 839 (1977); *United States* v. *Basurto,* 497 F.2d 781 (9th Cir. 1974); *State* v. *Hoekstra,* 286 N.W.2d 127 (S.D. 1979). See also *United States* v. *Gallo,* 394 F. Supp. 310 (D. Conn. 1975).

*Commonwealth* v. *Douzanis*, 384 Mass. 434 (1981); *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764 (1981). If it becomes known to the prosecution that false testimony was knowingly used to obtain an indictment, it is the duty of the prosecutor so to advise the court and request a dismissal of the indictment. See S.J.C. Rule 3:08, PF 12, as appearing in 382 Mass. 802 (1981). Narrowing our discussion of law to the facts of this case, we think another principle is discernible. If a large number of indictments are obtained primarily through the testimony of one grand jury witness in connected proceedings, and it is shown that a large percentage of the indictments were obtained through the knowing use of false testimony, it might not in some circumstances be an abuse of discretion to dismiss *all* the indictments on the ground that a presumption of invalidity has arisen or on the ground that prophylactic action is necessary. See *Commonwealth* v. *Manning*, 373 Mass. 438 (1977).

The judge in this case was presented with a delicate fact situation that did not lend itself to an easy application of these principles. Without other evidence the judge could not appropriately make findings as to the truth of Detective Linsky's testimony or as to whether it was given with knowledge of its falsity.[5] Even if the judge could surmise that eleven of the indictments — those whose dismissal the Commonwealth did not oppose — were obtained on the basis of knowingly false testimony, that did not necessarily mean that the remaining fifty indictments should summarily be dismissed. Certainly, however, the situation called for some action by the judge. His orders of July 15, 1981, and September 15, 1981, in effect, put some of the responsibility on the Commonwealth to demonstrate that the remaining indictments were valid. Although the defendants

---

[5] We emphasize that we also reach no conclusion as to whether Detective Linsky knowingly gave false testimony before the grand jury. His testimony consisted of a recitation of hearsay and it may be, for example, that he, or the Commonwealth, will ultimately contend that false testimony resulted from a confusion of documentary evidence.

were burdened with having to conduct much of the investigation, and probably would bear the burden of ultimately proving that the indictments were invalid, the Commonwealth was required to produce for the defendants the current addresses of the victims in the so called "Linsky cases," in order that the defendants could at least be in a position to challenge some or all of the remaining indictments. The defendants had made enough of a showing of impropriety in the grand jury process to justify this action.

In the circumstances, we think that the judge acted well within his field of discretion. It would have been unfair to the defendants to permit the Commonwealth to proceed to trial on some indictments while questions about the other indictments went unresolved. The defendants were entitled to have their questions resolved within a reasonable time. Moreover, the judge's actions were not unfair to the Commonwealth. Given the serious doubts that existed concerning the integrity of all the grand jury proceedings, it was appropriate to put some responsibility on the Commonwealth to resolve those doubts. When the Commonwealth failed to produce the required information as to thirty-seven of the indictments, the prejudice to the Commonwealth of the judge's dismissal of those indictments was ameliorated by two factors. First, the Commonwealth retained the right to seek reindictment of the defendants on other evidence. Second, if the Commonwealth could not locate the victims for purposes of complying with the judge's order of July 15, 1981, it seemed likely that the Commonwealth would also be unable to locate them for purposes of proving its cases at trial. In the totality of the circumstances, we think that the failure of the Commonwealth to comply with the judge's order, even though a good faith effort was made, warranted the dismissal of the thirty-seven indictments.

We affirm the judge's order dismissing the thirty-seven indictments.

*So ordered.*