Agnes, A.J.
BACKGROUND
The defendants, Nelson F. Bandeira (“Nelson”) and Leonardo B. Bandeira (“Leonardo”), were both charged and indicted for Home Invasion, Armed Assault to Murder, Armed Assault in a Dwelling, and Assault by means of a Dangerous Weapon in June 2003. This matter is before the court on each defendant’s Motion to Dismiss the indictments. The two motions have hereby been consolidated. For the reasons stated below, the defendants’ motions to dismiss are DENIED.
FINDINGS OF FACT
The findings of fact are derived solely from the grand jury transcript."[2] The sole witnesses testifying before the grand juiy were Officer Gagne, the Winchendon police officer who responded to the call, and Sean Smith (“Sean”), one of the two alleged victims.[3] The other alleged victim, Christopher LeBlanc (“Chris”), did not testify before the grand jury.
The grand jury was presented with the following testimony of Officer Gagne relevant to the defendants’ motions to dismiss. At approximately 1:00 a.m. on October 14, 2002, Officer Gagne responded to a call regarding an incident at Sean’s residence, 27 School Street in Winchendon. Upon arrival, he was met outside by Sean and Chris, who told him they had been assaulted by the defendants. Chris, a guest of Sean’s, had an abrasion on his face where he said he had been kicked. Sean was bleeding from lacerations to the back of his head and had a bite mark on his chest. Officer Gagne recovered a meat tenderizer and a steel curl bar used for weight lifting that were alleged by Sean and Chris to have been brought to the residence and used as weapons by the defendants. Sean and Chris told Officer Gagne that Nelson had telephoned the residence an hour to two hours before arriving and said he was planning to “come and get them.” Sean and Chris told Officer Gagne that Nelson and Leonardo came to the residence and knocked on the door, that Sean and Chris answered the door and stepped outside together to face the defendants who were brandishing weapons. Subsequently, Nelson chased Chris across the street, and Leonardo began to beat Sean about the head and chase him inside. Chris told Officer Gagne that Nelson stopped chasing him and turned around and entered the residence whereby Chris followed Nelson inside. Once inside, Chris saw Nelson and Leonardo beating Sean in the head. Two witnesses, Alisha Lyon and Tanya Lanpher, were present at the residence when Officer Gagne arrived. Officer Gagne took statements from Sean and Chris; another officer took statements from Alisha and Tanya.
Officer Gagne read both Sean’s and Chris’ statements to the grand jury. Sean’s statement includes the following: “An hour later I received a knock on my door from [Nelson] Bandeiras [sic.]. With him was his brother, Leo Bandeiras [sic.]. I then walked outside with Chris ... to find both men with metal objects. I ran back inside the house and Leo followed me. He then struck me several times with what looked like a pipe. I received thirty stitches and a bite mark and several black and blues. Flavio Bandeiras and Leo Bandeiras then left the scene.”
Chris’ statement includes the following: “I was at Sean Smith’s house, along with Sean, Alicia, and Tanya, when we received a phone call from Nelson ... I was given the phone, and Nelson said to me, ‘I’m coming to get you’. . . later, as we were getting ready for bed, I heard a knock on the door... When I opened the door, ... I saw Nelson and Leonardo Bandeiras [sic.] standing side by side in the driveway. Sean and I stepped outside. At this time we were both charged by each of them as they pulled and tried to use a metal bar and a metal meat tenderizer. Sean was chased into the house, and I across the yard. The man chasing me turned around and went back to the house where he, too, went inside and where Sean was fighting with Leo. I observed Leo hitting Sean with a metal object. As Nelson entered the house, he, too, started swinging at Sean. I grabbed one of the men and started fighting with him. I dragged the man I was fighting with outside and took the metal meat tenderizer away from him.”
The grand juiy also heard the direct testimony of Sean Smith, which includes the following: “My buddy told me that — Chris, he said, ‘Someone’s here,’ because he heard a faint knock on the door. So I got my shoes on, went outside with Chris. He informed me that they had weapons. I looked at him. He charged me. I tried to run for the screen door, got hit in the head from Leonardo Bandeira, because he was the one that was facing me when I went outside. He had charged me first ... He hit me over the head with a metal pipe. He hit me again. I opened the screen door, got into the apartment. He hit me again . . . He had the metal pipe ... So his brother came into the house, and at a certain time it was just Nelson and Leonardo at a certain time. They both charged me. I got tackled onto a futon ... My testicles were grabbed [by Nelson]. I was bitten [by Nelson] . . . [Chris] was assaulted . . .
*362 Chris was kicked in the face ... I don’t believe [ I got hit with the meat tenderizer] . . . Nelson had the meat tenderizer. Leonardo had the metal pipe. Nelson, the one with the meat tenderizer, he only grabbed my testicles and bit me. That’s all.”
DISCUSSION
A. Background
As a general rule, “an indictment valid on its face should not be dismissed absent a showing that the defendant’s ability to obtain a fair trial is prejudiced.” Commonwealth v. Pellegrini, 414 Mass. 402, 405-06 (1993). A challenge to the validity of an indictment will only be successful when the motion demonstrates that (1) the evidence presented to the grand juiy was insufficient to support the existence of probable cause and to establish the identity of the accused or (2) the integrity of the grand jury proceedings was impaired. Commonwealth v. McCarthy, 385 Mass. 160 (1982); Commonwealth v. O’Dell, 392 Mass. 445 (1984). Generally, a “court will not inquire into the competency or sufficiency of the evidence before the grand juiy.” Commonwealth v. Salman, 387 Mass. 160, 166 (1982). The Supreme Judicial Court has declared that dismissal is a remedy of last resort. Commonwealth v. Troy, 405 Mass. 253 (1989); Commonwealth v. Ortiz, 425 Mass. 1011, 1012 (1997).
1.Insufficient Evidence
The legal standard for a finding of sufficient evidence before a grand jury requires that it hear “at the veiy least. . . sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him . . .” McCarthy, 385 Mass, at 163 (1982) (citations omitted). The Supreme Judicial Court has explained that, “(pjrobable cause exists where ‘the facts and circumstances within . . . [the officers’] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that’ an offense has been or is being committed . . . Probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Hason, 387 Mass. 169, 174 (1982) (citations omitted). See also Commonwealth v. Roman, 414 Mass. 642, 647 (1993).
2.Impaired Integrity
In order to show that the integrity of the grand juiy has been impaired, the defendant must be able to establish “[t]hat false or deceptive evidence was given to the grand juiy ‘knowingly’ or recklessly, ‘for the purpose of obtaining an indictment,’ and . . . ‘that the presentation of the false or deceptive evidence probably influenced the grand juiy’s determination to hand up an indictment.’ ” O’Dell, 392 Mass, at 449-50 (1984); Commonwealth v. Tavares, 27 Mass.App.Ct, 637, 639 (1989), quoting Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986). See also Commonwealth v. Drumgold, 423 Mass. 230, 235 (1996); Commonwealth v. Ali, 43 Mass.App.Ct. 549 (1997).
3.Dismissal of Indictments Based Either on the Use of Unreliable Hearsay or the Intentional Use of False Testimony
An indictment may be based solely on hearsay. Commonwealth v. Gibson, 368 Mass. 518, 522-525 (1975); Commonwealth v. Walsh, 255 Mass. 317, 318-319 (1926); Commonwealth v. Brien, 19 Mass.App.Ct. 914 (1984); Mass.R.Crim.P. 4(c). However, hearsay testimony might in “extraordinary circumstances” warrant a dismissal where the hearsay is so lacking in credibility as to defeat the probable cause for arrest standard. Commonwealth v. St Pierre, 377 Mass. 650, 655 656 (1979) (citations omitted).
Dismissal of indictments may also be warranted where there exists evidence that they were based on testimony that was intentionally falsely given. Commonwealth v. Salman, 387 Mass. 160 (1982). However, in other cases, it has been held that inaccurate statements made in good faith do not warrant dismissal. Commonwealth v. Reddington, 395 Mass. 315, 320 (1985); Commonwealth v. Lombard, 419 Mass. 585, 594 (1995).
4.The Purpose of the Grand Jury and the Prosecution’s Right to Withhold Exculpatory Evidence
The Massachusetts grand jury serves two fundamental purposes — it is an accusatory body and it is that body which stands between the government and the individual to guard against “hasty, malicious, and oppressive public prosecutions.” Jones v. Robbins, 8 Gray (74 Mass.) 329, 343-44 (1857). It is not the purpose of the grand juiy to determine the guilt or innocence of the accused. Ordinarily, it does not even consider evidence that exculpates the accused, and, instead, is confined to evidence that is produced by the Commonwealth. Commonwealth v. McNary, 246 Mass. 46 (1923). Thus, under ordinary circumstances, the Commonwealth has no duty to present exculpatory evidence to the grand jury. Commonwealth v. McJunkin, 11 Mass.App.Ct. 609, 613 (1981). While there may be circumstances warranting a further investigation into the necessity of hearing from witnesses not produced by the prosecution, such as where “the grand juiy are actually convinced that their testimony may be material and pertinent, and of such a nature as would elucidate or explain the evidence for the government, and lead them to a more perfect knowledge of the merits of the case . .. great judgment and extreme caution ought to be used, to guard against the danger of hearing evidence on the part of the defendant, and thus changing the institution of a grand juiy to that of a traverse jury; by which the whole merits of the case may be decided in a private, instead of a public, tribunal . . .” Commonwealth v. McNary, 246 Mass. 46, 51 (1923) (citations omitted).
5.Joint Venturer Liability
“The test [for participation in a joint venture] is ‘whether each defendant was (1) present at the scene *363 of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary.’" Newman v. Commonwealth, 437 Mass. 599, 601 (2002), quoting Commonwealth v. Bianco, 388 Mass. 358, 366 (1983). If one is present and participates in the commission of an offense, he is a principal in a joint venture, and the degree of participation is immaterial. Commonwealth v. Michel, 367 Mass. 454, 456-58 (1975).
B. Specific Claims by Defendants
The defendants raise the following arguments in support of their motions to dismiss. First, the evidence presented before the grand jury by the Commonwealth was either unreliable or contradicted prior statements and, therefore, was insufficient to support the existence of probable cause to arrest the defendants under any of the four offenses with which the were charged.
Second, the integrity of the grand jury proceedings was impaired in several ways which prejudiced the juiy and led to the decision to indict. In support of this argument, the defense claims that (1) Officer Gagne’s testimony was unreliable hearsay because it was misleading, false and deceptive, and known to be so by the Commonwealth, since it had participated in the probable cause hearing, and (2) the Commonwealth’s exclusion of exculpatoiy probable cause hearing testimony given by the alleged victims and the witnesses sufficiently distorted the evidence before the grand jury. Third, the false and misleading testimony of Officer Gagne and the exclusion of exculpatory evidence affected the grand jury’s decision to indict. Fourth, counsel for Nelson Bandeira asserts that the lack of evidence that (1) Nelson was armed at the time he arrived at the residence or that (2) Nelson stuck Sean with a weapon requires dismissal of all four indictments against Nelson, individually, since possession of a weapon is an element of each of the four offenses.
This court addresses each argument in turn.
1. Insufficiency of Evidence
In support of the claim that Officer Gagne knowingly or recklessly falsely testified, and that such testimony should therefore be considered unreliable hearsay, the defendants point to two excerpts of Officer Gagne’s testimony from the grand juiy minutes. In the excerpt, Officer Gagne stated, “Christopher LeBlanc and Sean Smith exited the residence and were encountered by the two gentlemen, Nelson and Leonardo, brandishing weapons.” (GJ: page 6: lines 4-7.) The defendants contend this testimony is unreliable hearsay because it is contradicted by Chris’ probable cause hearing, which was not presented to the grand juiy.
The defendants’ argument is flawed because (1) the Commonwealth had no duty to present exculpatoiy evidence, e.g., earlier probable cause hearing testimony, McNary, 246 at 51, and thus, it is irrelevant whether or not it would have corroborated Officer Gagne’s testimony; (2) Officer Gagne’s testimony regarding the defendants’ “brandishing [of] weapons” was clearly corroborated by an excerpt from Chris’ original police statement which was read to the grand jury[4] and (3) the grand jury was not charged with weighing the evidence presented by Officer Gagne and Sean in the way evidence would be weighed at trial; its only purpose was to determine whether probable cause existed to arrest Nelson and Leonardo, on the basis of the evidence that was presented. McCarthy, 385 Mass. 160, 162 (1982). This court finds that Officer Gagne’s testimony regarding the defendants’ alleged “brandishing of weapons” was not given with knowing or reckless falsify, and therefore does not constitute unreliable hearsay.
The second instance of Officer Gagne’s alleged unreliable hearsay testimony pertains to his characterization of Nelson’s participation in assaulting Sean Smith and reads as follows: “Christopher indicated he turned and ran back into the residence to discover Nelson and Leonardo both beating Sean Smith about the head with the weapons they had.” (GJ: page6: lines 19-23.) Chris’ original police statement, as read to the grand jury, states, “I observed Leo hitting Sean with a metal object. As Nelson entered the house, he, too, started swinging at Sean.” (GJ: page 9: lines 16-18.) Sean’s original police statement, as read to the grand jury, states, “I ran back inside the house and Leo followed me. He then struck me several times with what looked like apipe ... [Nelson] Bandeiras and Leo Bandeiras then left the scene.” (GJ: page 8: lines 1-7.)
While the defense is correct that neither Sean nor Chris’ original police statements mention Nelson “beating [Sean] about the head,” Chris’ statement indicates that Nelson “started swinging” at Sean. Whether Nelson’s “swinging” involved a weapon is ambiguous, but such ambiguity is insufficient to establish that Officer Gagne knowingly or recklessly gave false grand jury testimony constituting unreliable hearsay. In Commonwealth v. Salmon, 387 Mass. 160 (1982), dismissal of numerous indictments was warranted on the basis of overwhelming evidence that the police officer intentionally falsely testified in order to get the indictments. In Salman, the victim’s own grand juiy testimony sharply contradicted that of the testifying officer, the officer’s testimony was the sole basis upon which most of the indictments had been based, and the prosecution was aware that false testimony had been given. Here, Sean’s testimony does not contradict Officer Gagne’s testimony, the indictments were not based soely on the testimony of Officer Gagne, and the Commonwealth has no reason to believe that Officer Gagne testified falsely. Given that the grand juiy was presented with the original statements of the alleged victims as well as Officer Gagne’s testimony, any alleged inconsistencies between them *364 could be considered by the grand juiy in deciding whether to indict. Furthermore, Sean’s direct testimony constitutes sufficient evidence of his criminal conduct and status as a joint venturer: “[I] went outside with Chris. He informed me that they had weapons. I looked at him. He charged me ... I ran for the screen door. He hit me over the head with a metal pipe ... So his brother came into the house, and at a certain time it was just Nelson and Leonardo at a certain time. They both charged me. I got tackled onto a futon . . .” (GJ: page: 14: line 17 — page 16: line 5.) Lastly, anything that Sean and Chris verbally told Officer Gagne when he arrived at the scene, before their statements were taken, constitutes admissible hearsay testimony. Accordingly, this court finds that Officer Gagne did not knowingly or recklessly give false testimony, and his testimony was not based on unreliable hearsay.
2. Impairment
The defense argues that the Commonwealth’s exclusion of exculpatory probable cause hearing testimony also impaired the grand jury. In support, the defense points to numerous contradictions that exist (1) between the accounts given by the alleged victims and the witnesses in police statements taken several hours after the incident had occurred and the accounts they gave at a later probable cause hearing; and (2) between Sean and Chris’ probable cause hearing testimony and the grand jury testimony of both Officer Gagne and Sean Smith. However, there are no extraordinary circumstances in this case that warrant requiring the Commonwealth to present any allegedly exculpatory testimony from the probable cause hearing. See Commonwealth v. Salman, 387 Mass. 160 (1982); Commonwealth v. St Pierre, 377 Mass. 650 (1979); Commonwealth v. McNary, 246 Mass. 46, 51 (1923); Commonwealth v. McJunkin, 11 Mass.App.Ct. 609, 613 (1981). And there is no reason to believe that the testimony given by the alleged victims and witnesses at the probable cause hearing was more or less truthful than any other testimony or statements they gave. Accordingly, this court finds the integrity of the grand jury was not impaired by the Commonwealth’s decision to exclude allegedly exculpatory probable cause testimony from the grand jury proceedings.
There is no need to address the defendants’ third argument regarding whether the jury was unduly prejudiced by the presentation of false, misleading, or distorted evidence, since this court has determined that Officer Gagne’s testimony was not unreliable hearsay and that the Commonwealth permissibly excluded allegedly exculpatory probable cause testimony.
Lastly, the argument raised by Nelson’s counsel regarding the alleged lack of evidence that (1) Nelson was armed at the time he arrived at the residence or that (2) Nelson stuck Sean with a weapon, thereby requiring dismissal of all four indictments against Nelson, is frivolous. Not only was the grand jury presented with sufficient trustworthy testimony that Nelson was armed before and during the assault, even if he had been unarmed, his participation in the commission of the offenses suffices to make him a principal in a joint venture with Leonardo. Therefore, the evidence before the grand jury was sufficient to support the indictments against Nelson on all four charges.
In sum, this court finds that the grand jury was presented with sufficient evidence against both defendants to indict and that the proceedings were not impaired. Accordingly, defendants’ motions to dismiss indictments are DENIED.
ORDER
For the foregoing reasons, defendants Nelson F. Bandeira and Leonardo B. Bandeira’s motions to dismiss indictments No. 03-0860 (1-8) and indictments No. 03-00859 (1-7) are DENIED.

Citation to the grand jury transcript in this Memorandum of Decision and Order shall be denoted as GJ:_:_, including page and line numbers.

Sean Smith is also known as Sean Pinnick-Smith.

“Sean and I opened the door and stepped outside. At this time, we were both charged by each of them as they pulled and tried to use a metal bar and a meat tenderizer.”