SUPERIOR COURT 
 
 COMMONWEALTH vs. CARLOS RODRIGUEZ

 
 Docket:
 2177CR00070
 
 
 Dates:
 July 14, 2021 
 
 
 Present:
 /s/Jeffrey T. Associate Justice, Superior Court 
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS (Paper No. 12)
 
 

             On February 17, 2021, the Grand Jury returned eight indictments against defendant Carlos Rodriguez ("Rodriguez"). He is charged with the following four offenses regarding events that allegedly occurred on September 12, 2020: armed assault with intent to murder Gabriel Deltoro Arias (Indictment 001), unlawful carrying of a firearm (Indictment 002), unlawful possession of a loaded firearm (Indictment 003), and discharging a firearm within 500 feet of a building (Indictment 004 ).[1]
            On June 25, 2021, the Court conducted a hearing on Defendant's Motion To Dismiss (Paper No. 12) ("Motion"). Rodriguez seeks dismissal of Indictment Nos. 001 through 004. He argues that the indictments must be dismissed because the integrity of the Grand Jury proceedings was impaired due to the Commonwealth's presentation of certain "false or deceptive" evidence. See Commonwealth v. O'Dell, 392 Mass. 445 (1984).
-------------------------------------
[1] Rodriguez is charged with four other offenses stemming from the execution of a search warrant on September 16, 2020, which are not pertinent to the Court's decision.
 
                                                            -1-
 
            As is explained below, after thorough consideration of the evidence presented to the Grand Jury, the submissions of the parties, and arguments of counsel, the Motion is
ALLOW ED.
BACKGROUND
            The Commonwealth presented evidence to the Grand Jury on February 17, 2021. The evidence included the testimony of two officers, Tim Yerian ("Yerian") and Alexander Ovalles ("Ovalles"), employed by the Lawrence Police Department ("LPD"), and four exhibits.[2] The exhibits included photographs, a map, and lnstagram "screenshots."
            The following is a summary of evidence presented by the Commonwealth to the Grand Jury that is material and relevant to the Court's determination of the Motion.[3]
            Yerian testified that on September 12, 2020, at approximately 9:00 p.m., he and other LPD officers responded to Lawrence General Hospital ("LGH") for a report that Gabriel Deltoro Arias ("Arias") was present with a gunshot wound to his left arm. Arias told Yerian that he was shot inside an apartment building located at 103 Hawthorne Way in Lawrence ("Building") by a male that approached him with two other men. He further stated that he went to Apartment 202 at the Building ("Apartment") at the request of a man he knew as "El Chacar" to pick up money Arias lent to "El Chacar." Arias found no one home at the Apartment, and was approached by the shooter and the other two men inside the Building. Arias believed that "El Chacar" "set him up."
 
-------------------------------------
[2] The Commonwealth also presented four items "for identification" (i.e., as chalks). The pertinence and reason why the items were marked for identification and not formally presented to the Grand Jury as exhibits is not clear to the Court. The chalks are not part of the record before the Court.
[3] Additional evidence is set forth in the Discussion section, infra.
 
                                                            -2-
 
            Yerian further testified that: a shell casing was found outside of the Apartment; police eventually concluded Rodriguez lived at the Apartment with his girlfriend, Jennifer Lara; and, Rodriguez was the man Arias knew as "El Chacar." Yerian also testified that a witness told police that after hearing gunshots from the Building she observed a man wearing "an army print and black T-shirt" run away from the Building and get into a car that drove away.
            One of the Grand Jurors asked Yerian, "Did the victim identify Carlos Rodriguez as the shooter?" Yerian replied, "Yes, he did. Eventually, he identified him, yes. Just not at that time to me. At that time he only knew him as El Chacar."
            Ovalles testified that he  investigated  the shooting.  He  interviewed  Arias  and Arias' girlfriend who drove Arias to LGH, and he learned that Arias' girlfriend had lent El Chacar's girlfriend, Lara, $5,000 to post bail on behalf of El  Chacar.[4] Ovalles  further testified that he found Rodriguez's lnstagram  page wherein Rodriguez  identified  himself as "Chacar47," and that, using photographs Ovalles obtained on Rodriguez's lnstagram page, Arias' girlfriend identified Rodriguez as "El Chacar."
            Arias told Ovalles that prior to the shooting he and his girlfriend hung out with Rodriguez and Lara at the Apartment. Arias further reported that on the day of the shooting he communicated with "El Chacar" and made arrangements to meet "El Chacar" at the Apartment at 8:00 p.m. to be paid back the money that was owed. Arias went to the Building at the designated time and called "El Chacar," who said he wasn't home. Ten minutes later "El Chacar" called Arias and stated he was home (i.e., at the Apartment). Arias went to the Apartment, knocked on the door, and no one answered.
 
-------------------------------------
[4]  The recording of the interview of Arias was "marked for identification" before the Grand Jury. See n. 2, supra.
 
                                                            -3-
 
Then, three men approached Arias and he began to run away when he saw that one of the men, who was wearing a "green camouflaged-style jacket with a hood" (also described as an "Army jacket") had a black firearm. As he was running away, Arias heard gunshots, felt tingling in his left arm, and realized he had been shot. He ran away from the Building and eventually ended up at LGH.
            Arias provided Ovalles with a utility bill that "El Chacar" sent Arias, which was addressed to Rodriguez at the Apartment's address.
            Ovalles further testified that the police presented Arias with a photo array and that Arias selected Rodriguez's photo and "identified [Rodriguez] as El Chacar." Further, when shown a photo of Rodriguez taken from his lnstagram page, Arias stated the Army jacket that Rodriguez wore in the photo was "the one that was worn by the shooter."
            Police executed a search warrant at Rodriguez's home (the Apartment) and seized the long Army jacket Rodriguez wore in the aforementioned lnstagram photograph. Officers also seized five 9 mm bullets, the same caliber as a shell casing the police recovered near the scene of the shooting (i.e., outside the door to the Apartment).
            When arrested, Rodriguez told Ovalles that he had been in contact with Arias and was supposed to pay back money he owed Arias. Rodriguez further claimed that Arias had been involved in drug trafficking near the Building, and that three men approached him and stated they were going to rob Arias.
 
                                                            -4-
 
DISCUSSION
            In the Motion, Rodriguez argues that the four aforementioned indictments stemming from the shooting on September 12, 2020, must be dismissed because the integrity of the Grand Jury proceedings was impaired by the Commonwealth's presentation of "false and deceptive evidence" regarding Arias' identification of Rodriguez as the shooter.
                        I. THE LEGAL FRAMEWORK
            "Under art. 12 of the Massachusetts Declaration of Rights and G.L. c. 263, § 4, a defendant may not be indicted for a felony unless a grand jury, based on sufficient evidence, find probable cause to believe that the defendant committed the crime charged." Commonwealth v. Walczak, 463 Mass. 808, 837 (2012) (Gants, J., concurring). "(C]ourts ordinarily do not inquire into the competency or sufficiency of the evidence presented to the grand jury." Commonwealth v. Cheremond, 461 Mass. 397, 404 (2012) (citing Commonwealth v. Moran, 453 Mass. 880, 883 - 884 (2009)); see also Walczak, 463 Mass. at 816 (2012) (Lenk, J., concurring) (same) (citations omitted).
            However, as an exception to that rule, a court may consider whether the integrity of the grand jury proceedings was impaired due to "the knowing use by the Commonwealth or one of its agents of false testimony to procure an indictment." Commonwealth v. Salman, 387 Mass. 160, 166 (1982). "In order to sustain his claim of impairment of the integrity of the grand jury proceedings, the defendant bears a heavy burden." Commonwealth v. Shea, 401 Mass. 731, 734 (1988). "'Dismissal of an indictment based on impairment of the grand jury proceedings requires proof of three elements: (1) the Commonwealth knowingly or recklessly presented false or deceptive
 
                                                            -5-
 
evidence to the grand jury; (2) the evidence was presented for the purpose of obtaining an indictment; and (3) the evidence probably influenced the grand jury's decision to indict."' Commonwealth v. Carr, 464 Mass. 855, 867 (2013) (citations omitted).
 
II. THE DEFENDANT HAS MET HIS BURDEN TO PROVE THAT THE COMMONWEALTH'S PRESENTATION OF FALSE EVIDENCE IMPAIRED THE INTEGRITY OF THE GRAND JURY PROCEEDINGS
            Rodriguez contends that the above quoted answer by Yerian to the question of a Grand Juror stating that Arias identified Rodriguez as the shooter was "false and deceptive," and that the Commonwealth's failure to correct the record before the Grand Jury constituted a "reckless disregard of the truth" and impaired the integrity of the Grand Jury proceedings, warranting dismissal of the four indictments.
            For its part, the Commonwealth concedes that Yerian's answer to the Grand Juror's question was "factually inaccurate" because, although Arias identified Rodriguez as "El Chacar" and there was circumstantial evidence presented that "El Chacar" was the shooter, Arias did not specifically identify Rodriguez as the shooter. Nevertheless, the Commonwealth contends the indictments should not be dismissed because Rodriguez failed to carry his burden to establish that the Commonwealth recklessly disregarded the truth in presenting the evidence and that the evidence influenced the Grand Jury's decision to indict.
            With respect to the first element of the aforementioned Carr test, and notwithstanding the Commonwealth's parsing of words to describe Yerian's answer to the Grand Juror's question, there is little dispute that the testimony was false. See e.g., Salman, 387 Mass. at 166 (detective's incorrect testimony that victims had been shown a series of photographs and had identified the defendant "raise[d] a suspicion that
 
                                                            -6-
 
certain indictments may have been obtained on the basis of knowingly false testimony."). Further, the Court has little doubt that the Commonwealth acted "recklessly" in presenting the false evidence.[5] See e.g., Commonwealth v. Reddington, 395 Mass. 315, 319 - 320 (1985) (dismissal not warranted where "[t]he defendant [] failed to establish that the Commonwealth or [the police officer] knew or should have known that the testimony in question was false or inaccurate.").
            Rather than clarifying the false evidence that Arias identified Rodriguez as the shooter, the following exchange between the prosecutor and Yerian demonstrates the prosecutor recklessly contributed to the presentation of additional false identification evidence:
            THE JUROR: Did the victim identify Carlos Rodriguez as the shooter?
            YERIAN: At that time?
            THE JUROR: At any time?
YERIAN [to the prosecutor]: Do you want me to answer that? PROSECUTOR: Yes, you can answer.
YERIAN: Yes, he did. Eventually, he identified him, yes. Just not at that time to me. At that time he only knew him as El Chacar.
PROSECUTOR: And your interview of him was in the hospital? YERIAN: Correct. Mine was in the hospital.
            PROSECUTOR: He was in the hospital bed, correct?
            YERIAN: Correct.
            PROSECUTOR: At some point Detective Ovalles spoke to him, correct?
            YERIAN: Yes.
            PROSECUTOR: And there was a photo array conducted, correct? 
            YERIAN: Yes.
 
-------------------------------------
[5] The Court does not reach, and expresses no opinion on, the issue of whether the Commonwealth "knowingly" presented the false evidence, i.e., intentionally presented it with knowledge of its falsity, because the record before the Court is not sufficiently developed to make such a determination. See Salman, 387 Mass. at 167 ("Without other evidence the judge could not appropriately make findings as to the truth of Detective['s] testimony or as to whether it was given with knowledge of its falsity.").
 
                                                            -7-
 
PROSECUTOR: And he was able to pick out a picture who he identified as the individual who was in [the Building] when he was shot?
            YERIAN: That is correct.
Grand Jury transcript, pp. 25 - 26 (emphasis added).
            The prosecutor's leading question, which Yerian answered in the affirmative, was a misstatement of the evidence. Arias did not identify "the individual who was in [the Building] when he was shot"; rather, Arias selected Rodriguez's photo and solely "identified [Rodriguez] as El Chacar."[6]
            With respect to the second element of the aforementioned Carr test, Rodriguez has proved that the Commonwealth presented the false evidence for the purpose of obtaining an indictment given that the Commonwealth presented evidence to the Grand Jury on a single day, the same day that it requested the Grand Jury to vote on issuance of the indictments.
            Therefore, the Court must determine if Rodriquez met his burden to show the third Carr element, that "the evidence probably influenced the grand jury's decision to indict."' Carr, 464 Mass. at 867. To make this determination, the Court must determine if "viewed in the context of all the evidence presented to the grand jury, [the false evidence] 'probably made a difference' in their decision to indict him." Commonwealth v. Freeman, 407 Mass. 279, 283 (1990) (citation omitted). However, "[t]he question on a motion to dismiss is not simply whether the false or deceptive testimony 'probably influenced' the grand jury in some abstract sense. Rather, the defendant must show not only that the evidence was material to the question of probable cause but that on the
 
-------------------------------------
[6] In fact, the Commonwealth conceded at the hearing that Arias never identified "El Chacar" as being present when he was shot.
 
                                                            -8-
 
entire grand jury record, the false or deceptive testimony probably 'would have affected the decision to indict."' Commonwealth v. Hunt, 84 Mass. App. Ct. 643, 657 (2013) (citations omitted).
            Here, viewing the entire record before the Grand Jury, the Court rules that the false evidence that Arias identified Rodriguez as the shooter probably affected the Grand Jury's decision to indict him for the events on September 12. The presentation of evidence as a whole to the Grand Jury was far from a model of clarity, especially as it related to the identification of the shooter. To be sure, with some parsing, the record before the Grand Jury could be pieced together to establish probable cause that Rodriguez was the shooter, as follows: "El Chacar" prompted Arias to go to the Building, "El Chacar" and the shooter had similar camouflage jackets,  Rodriguez was "El Chacar," and bullets were found in Rodriguez's apartment with the same caliber as a shell casing found near the scene of the shooting. Nevertheless, the Court cannot  ignore the fact that the false evidence was presented to the Grand Jury in response to a direct, unambiguous question by a member of the Grand Jury and that the Commonwealth recklessly presented additional erroneous identification evidence, as described above, in the form of Yerian's answer to the prosecutor's leading question.
            The Court recognizes that it is "constrained to look beyond the Commonwealth's recklessness and focus [its] analysis on the question whether 'if the grand jury had been told the true facts, it probably would not have indicted the defendant."' Id. (citations omitted). However, the Court answers this question in the affirmative given the disjointed presentation of the identification evidence to the Grand Jury, the significance of the false identification evidence, and because the false evidence was presented in
 
                                                            -9-
 
response to a direct question of a Grand Juror. Contra Hunt, 84 Mass. App. Ct. at 657- 658 (where witness falsely identified defendants and Commonwealth withheld information that witness had previously disclaimed ability to identify perpetrators, dismissal not warranted; it was unlikely false identification testimony would have affected decision to indict because other voluminous evidence provided probable cause to believe defendants had committed murder).
            More significantly, the following exchange between a Grand Juror and Ovalles at the very end of the presentation of the evidence Uust before the Grand Jury was asked to vote on the indictments) demonstrates that at least one Grand Juror continued to wrongly believe that Arias identified Rodriguez as the shooter:
THE JUROR: If you could draw the picture of the shooting? So we have the three guys and we have Mr. Rodriguez. And when the victim came in, he recognized, he saw the three people and Mr. Rodriguez? And the previous officer [Yerian] testified Mr. Rodriguez shot him, that [Arias] said that he shot him. Did the three men actually do anything at all or was it really just all Mr. Rodriguez?
OVALLES: ... Mr. Arias  was able to pick out the shooter, had a distinctive long jacket that Mr. Rodriguez is currently an owner of....
Grand Jury transcript, pp. 60 -61 (emphasis added).
            Once again, the Commonwealth recklessly took no steps to correct the evidence even though at least one Grand Juror openly believed Arias identified Rodriguez as the shooter. This conduct warrants the "prophylactic measure" of dismissal of Indictment Nos. 001 to 004, see Commonwealth v. Mayfield, 398 Mass. 615,620 (1986), and, accordingly, the Motion must be ALLOWED.
 
                                                            -10-
 
ORDER
            For the above reasons, it is HEREBY ORDERED that Defendant's Motion To Dismiss (Paper No. 12) is ALLOWED and Indictment Nos. 001 through 004 are HEREBY DISMISSED without prejudice.
 
@/s/Jeffrey T. Associate Justice, Superior Court 
 
@July 14, 2021 
 
                                                            -11-
 
xxz